In the Interest of B.B., A Child.

Appeal of STATE of Iowa.

No. 88–1348.

Supreme Court of Iowa.

May 17, 1989.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., Charles K. Phillips, Asst. Atty. Gen., for appellant.

Patrick L. Wilson, Marshalltown, for appellee parents.

Stephen A. Kenkel, Toledo, guardian ad litem for the child.

Considered by McGIVERIN, C.J., and SCHULTZ, CARTER, LAVORATO, and NEUMAN, JJ.

LAVORATO, Justice.

At issue here is whether a mildly mentally retarded child should be adjudged a child in need of assistance within the meaning of Iowa Code chapter 232 because of his parents' refusal to send him to school. The juvenile court referee dismissed a CHINA petition, holding that the child was not in need of assistance and that the compulsory education statutes provided the State's only remedy. The district court affirmed the referee's decision. We reverse and remand with directions.

I. Barry, the child, is an eleven-year-old Native American who lives with his family at the Mesquakie Indian Settlement near Tama. The father is a Native

American, and his mother is not. Four other children, ranging in age from fifteen through nineteen, live in the home.

In 1983 Barry was enrolled in kindergarten in the Tama school district. During the school year, he attended classes 154 days and was absent twenty-six days. School officials recommended that he be placed in special education classes the following year because his progress was unsatisfactory in all categories. Barry's parents objected, and he did not attend school during the 1984–85 school year.

Barry's mother, Anna, is certified in elementary education but not in special education. During the 1984–85 school year, with a curriculum provided by school officials, she taught Barry at home.

Barry reached the age of compulsory school attendance the following year. He was scheduled to return to school for special education tutoring. He, however, attended classes only fifty-one days and was absent 129 days.

During the 1986–87 school year, Barry attended classes nine and one-half days and was absent 170 days. A CHINA petition was filed in January 1988. During the first half of the 1987–88 school year, before the petition was filed, Barry had only attended school eighteen and one-half days and was absent sixty-four and one-half days.

Through these long periods of absenteeism, Anna gave Barry's illnesses as the reason for keeping him home. Medical records do indicate that Barry has suffered from ear and throat infections. Treatment for these illnesses have included insertion of tubes in his ears and a tonsillectomy. The record, however, is barren of any medical evidence that Barry's health would support his virtual absence from school for nearly three years, from late 1985 though March 1988, when the CHINA hearing was held. Moreover, the parents have not sought a health exemption from compulsory school attendance. *See* Iowa Code § 299.5 (1987).

During the CHINA hearing, Anna testified at great length about Barry's illnesses, but her testimony was not supported by the statements of other witnesses. She also testified that Barry played outdoors often, an assertion seemingly at odds with her claim that he is too ill to go to school.

The Area Education Agency psychologist, who had visited the home, testified that Barry seemed healthy during the visits. School district personnel testified that Barry appeared healthy on the days he did attend school. The juvenile court referee noted that Barry sat through two afternoons at trial and left quickly with the school superintendent to go to school on the second afternoon, even though his mother histrionically objected that he was too sick to go.

Medical and educational professionals who have evaluated Barry agree that he is mildly to moderately mentally retarded but educable. The school psychologist who observed the in-home education during 1984–85 testified that while Anna was a conscientious teacher, Barry had made no educational progress. The psychologist opined that Barry was not receiving enough lesson time and that he was suffering educational, social, and emotional harm by being withheld from school. Simply put, the psychologist believed that Barry needs the skills he would gain by being with other children. The psychologist also believed that Barry was reaching the age when it would be crucial for him to attend school.

In June 1987 a team of professionals in psychiatry, education, medicine, and social services conducted an independent evaluation of Barry. In a detailed report, the team concluded that Barry was retarded but educable and that he needed to attend special education classes to maximize his potential. The parents disagreed with the recommendations and refused to release the report to school officials.

School officials admitted that they had done little to compel Barry's school attendance. The elementary school principal, who also serves as a truant officer, testified he had never been to the home to investigate or to compel Barry's attendance at school. He had failed to do so, he testified, because of Anna's alleged threats to

harm anyone who would try to compel such attendance.

Anna was convicted in 1987 of violating Iowa's Compulsory Education Act for her refusal to send Barry to school. *See* Iowa Code §§ 299.1, 299.6. She received a suspended sentence and was placed on probation on the condition that she give assurances that Barry would attend school regularly.

In January 1988, at about the same time the CHINA petition was filed, the State prosecuted both parents for similar violations. They were found guilty, fined, and given jail time. Part of their jail time was suspended on the condition that Barry would be enrolled in and attend an accredited school. Anna was also found guilty of harassment. The parents have appealed these last convictions.

In alleging that Barry is a child in need of assistance, the State relied on three alternative definitions of a child in need of assistance. Those definitions are found in Iowa Code section 232.2(6) and include children who are (1) physically abused or neglected, (2) likely to suffer harmful effects from the parents' failure to exercise reasonable care in supervising them, and (3) in need of treatment for mental or emotional conditions and whose parents do not or cannot provide the needed treatment. *See* Iowa Code § 232.2(6)(b), (c)(2), (f).

The juvenile court referee dismissed the petition, finding that the State had failed to prove by clear and convincing evidence that Barry was a child in need of assistance. The referee noted that the juvenile code "does not specifically provide for child in need of assistance adjudication where parents fail to allow their children to attend school." According to the referee, the provisions applicable to the latter problem are found in Iowa Code chapter 299, the compulsory school attendance law.

On review, the district court affirmed. The State has appealed and has been joined in the appeal by Barry's guardian ad litem, who agrees that Barry is a child in need of assistance.

II. Iowa Code section 232.2(6) pertinently defines a child in need of assistance as an unmarried child:

. . . .

b. Whose parent ... has physically abused or neglected the child, or is imminently likely to abuse or neglect the child.

c. Who has suffered or is imminently likely to suffer harmful effects as a result of:

. . . .

(2) The failure of the child's parent ... to exercise a reasonable degree of care in supervising the child.

. . . .

f. Who is in need of treatment to cure or alleviate serious mental illness or disorder, or emotional damage as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior toward self or others and whose parent ... is unwilling or unable to provide such treatment.

The State alternatively alleged the three provisions as grounds for adjudicating Barry a child in need of assistance. The State, of course, has the burden of establishing these grounds by clear and convincing evidence in a CHINA proceeding. *See* Iowa Code § 232.96(2). Because we think the supervision allegation in section 232.-2(6)(c)(2) most closely fits the facts here, we restrict our discussion to it.

Preliminarily, we note several general principles that control our decision. Our review is de novo, which means we give the trial court's findings substantial weight but are not bound by them. There is a rebuttable presumption that the best interests of a child are served by parental custody. Finally, the provisions of Iowa Code chapter 232 are to be liberally construed to protect the welfare of the child. *In re De Rocher*, 187 N.W.2d 730, 731 (Iowa 1971).

Giving the reasonable supervision definition in section 232.2(6)(c)(2) a liberal construction, we are convinced the evidence clearly and convincingly meets the definition.

We have recognized that a child's best interests are the paramount concern in applying the juvenile code. A child's best

interests include not only proper care and treatment but also education. *In re G.R.*, 348 N.W.2d 627, 631 (Iowa 1984).

In *In re Devone*, 86 N.C.App. 57, 356 S.E.2d 389 (1987), the facts of which are strikingly similar to the facts here, the court was reviewing a juvenile court determination that a moderately mentally retarded child was neglected and dependent within the meaning of the North Carolina juvenile code. The basis of the juvenile court's determination was the parent's insistence on attempting to teach the child at home, thus denying the child's right to attend special education classes that were critical to his development and welfare.

The North Carolina juvenile code defines "neglected juvenile" as one who does not receive proper care, supervision, or discipline from his parents. N.C.G.S. § 7A–517(21). It defines a "dependent juvenile" as one who is in need of assistance and whose parent is unable to provide for his care or supervision. N.C.G.S. § 7A–517(13).

"Neglect" under Iowa Code section 232.-2(6)(b) is more narrow in meaning than "neglect" under the North Carolina juvenile code. "Neglect" is defined in Iowa Code section 232.2(38) as

> any nonaccidental *physical injury* suffered by a child as the result of the acts or omissions of the child's parent....

(Emphasis added.) Thus, unlike North Carolina's definition of neglect, physical injury to the child is a prerequisite to a finding of neglect under our "child in need of assistance" provisions.

"Neglect" under the North Carolina juvenile code, like "dependent," does, however, include lack of supervision—the very ground the State relies on here in seeking to establish that Barry is a child in need of assistance. Thus, the rationale put forth by the *Devone* court to support its finding of neglect and dependence has pertinent application to our determination here of lack of supervision. Affirming their trial court's finding that the juvenile was neglected and dependent, the *Devone* court said:

Although Jamie is a child of limited intelligence, he is entitled to an education which will help him reach his fullest potential. "It is fundamental that a child who receives *proper* care and *supervision* in modern times is provided a basic education. A child does not receive 'proper care' and lives in an 'environment injurious to his welfare' when he is deliberately refused this education, and he is 'neglected' within the meaning of [the North Carolina juvenile code]."

Because of his special needs, it is in Jamie's best interest that he receive the remedial care offered by the public school's special education classes. Such instruction is critical if he is to receive a "basic education." Although this remedial care is readily available to Jamie, respondent has prevented him from receiving it by keeping him out of public school and by insisting on teaching Jamie himself. Evidence that Jamie is being denied the remedial care he needs is sufficient proof to constitute neglect and a lack of proper care. A parent's insistence on attempting to teach a mentally retarded child constitutes neglect, if it denies that child the right to attend special education classes critical to the child's development and welfare.

*Devone*, 86 N.C.App. at 60, 356 S.E.2d at 390–91 (emphasis added) (citation omitted).

Likewise, Barry, although of limited intelligence, is entitled to educational opportunities that will maximize his talents and abilities. In his case, the experts all agree that special education classes *in school* will provide those opportunities and that no more time can be wasted in this respect.

Although Anna is a loving parent, she is also a doting and overprotective one. The referee was perceptive in discussing the problem as one of mother separating from child.

Anna's blind devotion to the child has clouded her thinking. She is simply irrational when it comes to Barry's being in school. She has tried to teach him at home, but to date he has made little progress. In fact, the experts agree that Barry's poor school attendance has ad-

versely affected his educational, social, and emotional development.

It is now time for Anna to give school a chance. There, Barry has at least a chance to acquire the social and self-help skills he so desperately needs just to survive.

For all of these reasons, we think the State has by clear and convincing evidence established that Barry is a child in need of assistance because of his parents' failure to exercise a reasonable degree of care in supervising him. The juvenile court referee and the district court erred in concluding otherwise.

III. Our task now is to determine what steps should be taken to further Barry's bests interests. Barry does have physical ailments. Anna has complained that no one in authority has seen fit to give the child a thorough physical examination to rule out major maladies. Such an examination should be done.

Next, Barry should attend school. We think that is the only way to ensure he will receive the benefit of special education classes. On the other hand, we think Barry should continue to have the love and attention of family and should therefore remain in the custody of his parents. *See* Iowa Code § 232.101(1). If the parents demonstrate continued resistance to in-school teaching, the juvenile court should then consider placement outside the home. *See* Iowa Code § 232.102.

Accordingly, we reverse and remand the case to the juvenile court referee with instructions to:

(1) enter an order adjudicating Barry to be a child in need of assistance pursuant to Iowa Code section 232.96;

(2) order an immediate physical examination of Barry at State expense;

(3) hold a dispositional hearing pursuant to Iowa Code section 232.99; and

(4) following the dispositional hearing, enter an order pursuant to Iowa Code section 232.101(1) permitting the parents to retain custody of Barry subject to such terms and conditions that ensure compliance with our determination relative to schooling.

The provisions of Iowa Code section 232.101(2) shall apply to whatever dispositional order is entered by the referee.

REVERSED AND REMANDED WITH DIRECTIONS.