**In the Interest of A.D. and G.D., Minor Children,**

**D.D., Mother, Appellant.**

**No. 91–1726.**

Court of Appeals of Iowa.

June 25, 1992.

Kevin D. Engels, Cedar Falls, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Judy Sheirbon, Asst. Atty. Gen., for appellee, the State.

Heard by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

SACKETT, Judge.

The mother of Amber Dalton [1] and Gloria Dalton [2] appeals from a juvenile court permanency order placing the children's custody with the biological father of Gloria, subject to the protective supervision of the Department of Human Services. The mother lived with Gloria's father for six years, but they were never married. Gloria's father is not Amber's biological father, but he has acted as Amber's father since her birth. Amber's biological father never appeared in these proceedings. His whereabouts are not known. We affirm.

Amber, born March 6, 1983, and Gloria, born January 19, 1985, were removed from their mother's custody on March 23, 1990. At the time of removal, Gloria's father was not living in the mother's home. In April 1990 the juvenile court, pursuant to a stipulation, determined the girls were children in need of assistance and transferred their custody to the Department of Human Services. On April 19, 1990, Amber and Gloria were placed with Gloria's biological father. The court ordered the girls' mother to be evaluated and treated for substance abuse. She was directed to have periodic urine analysis to monitor possible drug use. In April 1990 a counselor technician at the Northeast Council of Substance Abuse recommended the mother have in-patient substance abuse treatment. The mother did not follow the recommendation.

Dispositional hearings were held in July 1990 and January 1991. The court continued the children's placement with Gloria's biological father.

In June 1990 Amber and Gloria's mother took a job in a community fifty miles from where the girls lived. She moved to a one-bedroom apartment in that community. She lived with a man who was diagnosed as a "schizophrenic, chronic residual type." The man takes medication to control this condition, but his therapist reported he drinks alcohol while on medication and he could experience hallucinations. The man physically assaulted Amber and Gloria's mother on one occasion. She, however, takes the blame for the situation because she was drunk.

In December 1990 the mother again was evaluated and found to continue to have problems with drug and alcohol abuse. She did not seek counseling until after a January 1991 hearing, where the judge expressed concerns about exposing the girls to her alcohol use during visitation.

The mother did not submit to three scheduled urinalysis in 1991. In June 1991 her urinalysis revealed marijuana use. She did not tell her substance abuse counselor about the results of this test.

Visits between the mother and the girls were scheduled every weekend until May 1991, when they were scheduled twice a month. The mother did not take advantage of twelve scheduled visitations in 1991.

---

1. This is not the child's real name; her initials are A.D.

2. This is not the child's real name; her initials are G.D.

On September 16, 1991, a permanency hearing was held. In October 1991 the juvenile court entered a permanency order placing the guardianship and custody of both girls with Gloria's father. In making its ruling, the court recognized the placement was with Gloria's natural father and with a person it determined to be Amber's psychological father because he had been involved in Amber's life since she was born. The court also considered the mother's urine analysis showing marijuana use, the questionable ability of the mother's boyfriend to care for the girls when the mother was not in the home, the mother's lack of adequate physical accommodations for the girls, the girls' lack of trust in their mother's ability to care for them, and the mother's lack of maturity.

The mother contends the permanent placement order should not have been made because there is not clear and convincing evidence the children cannot be returned to her home. The mother incorrectly states the State's burden of proof. The State on a permanency hearing needs only show the children cannot be returned by convincing evidence, not by both clear and convincing evidence. *See* Iowa Code § 232.104(3)(c).

Our review is de novo. *See In re Blackledge,* 304 N.W.2d 209, 210 (Iowa 1981). We give weight to the juvenile court's fact-findings, especially when considering the credibility of witnesses, but we are not bound by these findings. Iowa R.App.P. 14(f)(7).

A permanency hearing is directed by Iowa Code section 232.104(1) (1991), which provides in relevant part as follows:

If a child has been placed in foster care for a period of twelve months, or if the prior legal custodian of a child has abandoned efforts to regain custody of the child, the court shall, on its own motion, or upon application by any interested party, including the child's foster parent if the child has been placed with the foster parent for at least twelve months, hold a hearing to consider the issue of the establishment of permanency for the child.

Iowa Code section 232.104(3)(c) provides that prior to entering a permanency order, the court must find convincing evidence must exist that:

a. A termination of the parent-child relationship would not be in the best interest of the child.

b. Services were offered to the child's family to correct the situation which led to the child's removal from the home.

c. The child cannot be returned to the child's home.

Iowa Code § 232.104(3) (1991).

Before we address the issue of whether there is convincing evidence to support the trial court's findings the dictates of section 232.104(3)(c) have been satisfied, we look at the relationship of these children to Gloria's father. The children are well cared for and well adjusted in his home and wish to remain in his home. The evidence clearly supports a finding that his home is superior to the home of the mother.

Gloria's father acknowledged paternity of Gloria and was a joint custodian of both children following their births and for a considerable period thereafter, even though he was not living with the mother at the time of removal. He was a parent entitled to legal custody of Gloria. *See In re J.R.H.,* 358 N.W.2d 311, 319 (Iowa 1984) (father of a child born out-of-wedlock who had acknowledged paternity and had physical custody of child prior to child in need of assistance proceedings was determined to be a parent entitled to legal custody of the child before proceedings where sole legal custody had not been established with either parent and neither parent's parental rights have been terminated); *Heyer v. Peterson,* 307 N.W.2d 1, 6 (Iowa 1981) (where the court ruled out gender-based discrimination in selection of a custodial parent between unwed parents). The provisions of Iowa Code chapter 232 are to be liberally construed to protect the welfare of the child. *See In re B.B.,* 440 N.W.2d 594, 596 (Iowa 1989). We distinguish *In re B.L.,* 470 N.W.2d 343, 346 (Iowa 1991) (where father's acknowledgment of paternity came

only after a suit for support was filed and blood tests taken and father had never petitioned for custody or visitation).

The mother has made considerable progress since January 1991. She has been involved in a substance abuse treatment program, she has been attending AA twice a week. She has shown substantial insight in eliminating her substance abuse problem. We recognize as the juvenile court found she did not exercise all scheduled visitation, but we understand her modest financial circumstances made it difficult for her to assume the cost of driving 100 miles to exercise visitation. We do not consider the fact that her current apartment is not of sufficient size to allow her to house the children. She is limited in the size of an apartment she can rent by her financial resources.

A finding the father is a superior parent is the only finding that need be made for him to retain custody of Gloria. We need only address whether there is convincing evidence meeting the dictates of Iowa Code section 232.104(3) (1991) as to Amber. A removal of Amber to the mother's care would split siblings. The children are happy and secure in the home of a man who is the biological parent of one child and the psychological parent of the other child. He has assumed substantial responsibility for both children since their births and prior to the commencement of these proceedings. The children want to stay with him. The mother has visitation with the children.

The juvenile court found Gloria's biological father and Amber's "psychological father" was a suitable person to take on the responsibilities of raising both girls, while allowing for an on-going contact with their mother. The evidence is convincing that Amber will suffer psychological harm if taken from this home, separated from her sister, and returned to her mother's care.

AFFIRMED.