In the INTEREST OF B.B., A Child,

A.B. and A.B., Father and Mother, Appellants,

State of Iowa, Appellee.

No. 91–1610.

Supreme Court of Iowa.

May 19, 1993.

Patrick L. Wilson of Wilson Law Office, Marshalltown, for appellants.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Judy A. Sheirbon, Asst. Atty. Gen., and Brent Heeren, County Atty., for appellee.

Stephen A. Kenkel of Mickelson, Roan, Appelgate & Kenkel, Toledo, guardian ad litem for the child, B.B.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

The parents, Anna and Archie, appeal from district court rulings finding their child, Barry, a child in need of assistance under Iowa Code section 232.2(6)(n) (1991), continuing Barry's placement in foster care, and placing restrictions upon their visitation privileges.

The court of appeals reversed the district court's rulings regarding the child in need of assistance petition and ordered Barry to be placed with his parents. We vacate the court of appeals decision and affirm the district court judgment.

I. *Background facts and proceedings.* This very protracted case involves a mildly, mentally retarded child, Barry, born in June 1977. Archie, Barry's father, is a Native American, and Anna, Barry's mother, is not.

The State originally filed a petition to find Barry a child in need of assistance in 1988, pursuant to Iowa Code sections 232.-2(6)(b), 232.2(6)(c)(2), and 232.2(6)(f) (1987), because his parents refused to send him to school. Upon appeal, we concluded that Barry was indeed a child in need of assistance under section 232.2(6)(c)(2). *In re B.B.*, 440 N.W.2d 594 (Iowa 1989). We ordered Anna and Archie to send Barry to school; if they failed to do so, we ordered the district court to place Barry in foster care. *Id.* at 598. Much has happened in this case since our decision.

In October 1989, Barry's parents were held in contempt of court for failing to send Barry to school. The district court consequently placed Barry in the custody of the Department of Human Services (DHS) and ordered foster care placement so he could be sent to school.

In May 1990, the parents appealed continued foster care placement. In an unpublished opinion, the court of appeals af-

firmed continued foster care and additionally ordered unsupervised visitation in the parental home during weekends and school holidays.

In June 1991, the district court held a review hearing regarding Barry's trial placement in the parental home, supervised by DHS, for the summer. DHS was to retain custody. Continued placement in the parental home beyond the summer months was conditioned upon Barry being registered for and attending school in the fall.

In September, the court held another hearing to review continued placement in the parental home. Barry's parents had not yet registered Barry for school. The district court ordered that Barry become registered for school.

To no one's surprise, Anna and Archie failed to register Barry for school. In October 1991 the district court ordered the DHS to maintain custody of Barry and place him in a foster home unless Archie and Anna registered Barry for school and he attended school. Anna and Archie did not and instead appealed this order.

Shortly thereafter, the State filed a motion to amend the child in need of assistance (CINA) petition to allege new grounds for the CINA adjudication. The State alleged Barry was a child in need of assistance under Iowa Code section 232.-2(6)(n) (1991), which allows a CINA adjudication where the mental capacity or condition of the parents results in the child not receiving adequate care.

In the meantime, Anna and Archie had one visitation with Barry. Barry was extremely upset both before and after the visit. Barry was hostile towards his foster parents and felt ill the entire week following this visit. As a result, Barry's guardian ad litem filed a motion to terminate the parents' visitation rights.

The court consolidated these two motions for hearing. We stayed the parents' appeal proceedings on the district court judgment ordering Barry's registration for school and foster care placement until after the district court ruled on the hearing proceedings and entered a dispositional order.

After a hearing, the district court found Barry's parents to be mentally unstable. As a result, Barry had suffered both emotionally and physically, and had received inadequate care. The court accordingly granted the State's motion to amend the CINA petition to include the grounds under section 232.2(6)(n). The court found the State had proven its allegations. The court refused to terminate Barry's visitations with his parents but placed conditions on such visitation.

The district court held a dispositional hearing on the amended CINA petition and made substantially similar findings.

Archie and Anna also appealed the dispositional order.

We transferred the case to the court of appeals. The court of appeals reversed the district court's judgment and placed Barry back with his parents.

We granted the State's application for further review.

We initially note that two themes have pervaded this entire litigation: Anna's obsession with Barry's health and her resulting failure to send him to school despite repeated opportunities and court orders to do so. We refuse to abandon Barry to her irrationality.

II. *CINA amendment.* The district court sustained the State's motion to amend its CINA petition to allege additional grounds under Iowa Code section 232.-2(6)(n). The court found that Anna's obsession with Barry's health resulted in emotional and physical harm to Barry. The court stated Barry had been hindered in his social and educational development. We agree.

We review the evidence in CINA proceedings de novo. *In re J.R.H.*, 358 N.W.2d 311, 317 (Iowa 1984). We give weight to the trial court's findings of fact, especially those regarding the credibility of witnesses, but we are not bound by them. Iowa R.App.P. 14(f)(7).

The welfare and best interests of the child are the governing concerns. *In*

re *J.R.H.*, 358 N.W.2d at 317; *In re Henderson*, 199 N.W.2d 111, 120 (Iowa 1972). Although the parents have a legitimate interest in the integrity of the family unit, that interest is not absolute. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). In determining the best interests of the child, we must consider what the future likely holds for a child if he is returned to parental custody. *Id.* As a result, we may look at the parents' past performance of caring for their child, as their past performance is indicative of their future care. *Id.*

▬▬ Finally, the State has the burden of proving its CINA petition allegations by clear and convincing evidence. Iowa Code § 232.96.[1]

Throughout this litigation, Anna has insisted Barry is too sick to attend school. She claims he vomits several times a day and rarely feels well enough to concentrate on school work.

During one supervised visit with Barry while he lived with foster parents, Anna persistently asked Barry if his stomach hurt until he stated that it did. She asked him whether he had been vomiting. She poked, prodded, and physically examined him until the social worker supervising the visit asked her to stop. As Anna was leaving, she told Barry to vomit on his teachers or foster parents if he needed to vomit.

Anna maintains Barry is severely ill despite all evidence to the contrary.[2] Various doctors have examined Barry and declared him healthy. One doctor did prescribe medication for possible stomach problems but did not state Barry was too ill to attend school. Barry's foster parents reported that Barry remained healthy even when this medication was discontinued.

Anna has thrown a saucepan of vomit at a DHS social worker, threatened various social workers and school staff, and claims

Barry has been drugged, hypnotized, and brainwashed by his social workers and foster parents. Anna also made an unsubstantiated allegation of sexual abuse against a prior foster parent and made verbally abusive phone calls to that house.

After the parent's first visitation with Barry while he lived with his foster parents, the DHS imposed guidelines on all future visitations. For example, Anna was prohibited from asking Barry about vomiting or illness. In refusing to comply with this guideline, Anna testified that if she could not physically examine Barry and ask him about illness, then she had no reason to visit Barry. In fact, Anna and Archie have apparently not visited Barry since November 1991.

Barry's social workers and foster mother testified that Barry enjoys school very much. He has made new friends. When Barry's foster mother, Linda, took him to a doctor after Barry had complained about not feeling well before the first visit with Archie and Anna, the doctor told Barry he was perfectly healthy. Linda testified that Barry then smiled and danced and sang, apparently being very happy that he was not sick.

Linda also testified that in foster care Barry has learned to take care of his personal hygiene. He has learned to read a little and can do his own laundry.

We have already determined that Anna's and Archie's failure to send Barry to school and to special education classes is sufficient grounds for a CINA adjudication. *See In re B.B.*, 440 N.W.2d 594. We now conclude the district court correctly found the State proved by clear and convincing evidence that Anna's obsession with Barry's health, and Archie's failure to intercede on Barry's behalf, is a mental capacity or condition which has resulted in Barry not receiving adequate care under section 232.2(6)(n). We affirm the district court's

---

1. We agree with the district court that Barry is also subject to the Indian Child Welfare Act (ICWA), 25 U.S.C. sections 1901–1963. We conclude, however, that the ICWA requirements have been fulfilled by the State's burden of proof in its amended CINA petition.

2. One physician testified that Anna is a Munchausen syndrome by proxy type person. This means Anna repeatedly convinces Barry he is ill, and Barry exhibits corresponding symptoms, even though no real illness exists.

ruling that the State had proved that Barry was a child in need of assistance under the additional ground in section 232.2(6)(n) due to his parents' mental condition.

■ III. *Continued placement in foster care.* Anna and Archie appeal the district court order continuing Barry's placement in foster care. The court of appeals reversed the district court judgment. We agree with the district court.

As already discussed, we conclude Anna's and Archie's behavior has resulted in inadequate care for Barry. Barry's educational and social well-being has suffered. We do not doubt that Anna's continuous obsession with Barry's supposed illnesses has resulted in at least some physical harm to Barry.

Even though Barry will likely return to his parents' home when he becomes 18 years old, and Anna will return to convincing Barry he is ill, we cannot abandon Barry during these final two years when he still has opportunities for education and socialization. If Barry had not left the parental house in October 1991, he would not have received any public schooling thereafter. By all accounts, Barry enjoys school and has benefited from foster placement. We cannot in good conscience take these benefits away from him. Therefore, we affirm the district court's order that Barry remain in foster care.

IV. *Parental visitation.* Barry's parents also appealed the district court's visitation guidelines order. We agree with the district court and affirm its guidelines for visitation.

■ After the first visit between Barry and his parents, the DHS wrote out four guidelines that Anna and Archie would have to follow during future visits. After a hysterical and loud yelling scene, Anna, and apparently Archie, refused to sign and abide by the guidelines. Subsequently, Barry's guardian ad litem petitioned the district court to terminate visitation because the first visit so upset Barry. Apparently, Anna and Archie have not visited Barry since refusing to abide by the guidelines in November 1991.

After a hearing on the matter, the district court refused to terminate visitation between Barry and his parents, but did condition all future visitations upon Anna's and Archie's compliance with four guidelines, which were in substance: 1) visitation is restricted to family members only; 2) both parents are to stay at least an arm's distance from the visitation supervisor, with no limitation placed upon the distance between the parent and the child; 3) neither parent is allowed to originate any discussion of vomiting or stomach problems, with all other inquiries about Barry's health being limited to general inquiries which are positive in focus; and 4) the parents will refrain from any negative comments about the foster home, foster parents, or service providers while Barry is present.

We believe these guidelines are quite reasonable in light of Anna's irrational and sometimes violent behavior. If Barry is to gain any benefit from foster care and schooling, these guidelines must be followed. We therefore affirm the district court's order allowing visitation subject to the court's guidelines.

V. *Disposition.* We do not believe the court system can give in to Anna and Archie to the detriment of Barry, whose parents will probably not be around his entire life to care for him. Barry has two years yet in which to benefit from foster care and schooling. We refuse to deny him this opportunity. We therefore vacate the court of appeals decision and affirm the district court judgment adjudicating Barry a child in need of assistance under section 232.2(6)(n), continuing foster care placement, and allowing visitation subject to the district court's guidelines.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**