# IN THE COURT OF APPEALS OF IOWA

No. 17-0862
Filed September 13, 2017

**IN THE INTEREST OF J.D. and D.D.,**
**Minor Children,**

**S.D., Mother,**
        Appellant,

**D.D., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Julie A. Schumacher, Judge.

Parents appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Craig H. Lane, Sioux City, for appellant mother.

Harold K. Widdison of Law Office of Harold K. Widdison, P.C., Sioux City, for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Marchelle Denker of Juvenile Law Center, Sioux City, guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

S.D. and D.D. are the parents of two children; their younger child was born in 2011. In May 2017, the juvenile court terminated the parents' parental rights, finding statutory grounds for termination under paragraphs (f) and (*l*) of Iowa Code section 232.116(1) (2017). The court also concluded termination of their parental rights was in the children's best interests. Both parents appeal. Upon our de novo review, we affirm.

### I. Standard of Review and Statutory Framework.

Parental rights may be terminated under Iowa Code chapter 232 if the following three conditions are met: (1) a "ground for termination under section 232.116(1) has been established" by clear and convincing evidence, (2) "the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights," and (3) none of the "exceptions in section 232.116(3) apply to preclude termination of parental rights."[1] *In re M.W.*, 876 N.W.2d 212, 219-20 (Iowa 2016). Our review is de novo, which means we give the juvenile court's findings of fact weight, especially the court's credibility assessments, but we are not bound by those findings. *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010); *see also In re B.B.*, 440 N.W.2d 594, 596 (Iowa 1989). If the juvenile court has found more than one statutory ground for termination, as is the case here, "we may affirm the . . . termination order on any ground that we find supported by clear and convincing evidence." *D.W.*, 791 N.W.2d at 707. "For evidence to be

---

[1] Because the parents do not challenge the juvenile court's determination that none of the exceptions in section 232.116(3) apply to preclude termination of their parental rights, we need not discuss that consideration. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

'clear and convincing,' it is merely necessary that there be no serious or substantial doubt about the correctness of the conclusion drawn from it." *Raim v. Stancel*, 339 N.W.2d 621, 624 (Iowa Ct. App. 1983); *see also M.W.*, 876 N.W.2d at 219.

### II. Discussion.

Here, the record shows that from at least August 2014 until court intervention in early 2016, law enforcement officials repeatedly responded to alcohol- and domestic-violence-related incidents concerning the parents and children. At the termination-of-parental-rights hearing at the end of April 2017, both parents claimed they had addressed their alcohol- and domestic-violence issues and the children could be returned to their care at that time. However, upon our de novo review of the record, we do not find the parents' claims to be credible and agree with the juvenile court that the State showed—by clear and convincing evidence—these children could not be returned to the parents' care at the time of the termination-of-parental-rights hearing.

Ultimately, this case turns on the parents' credibility—or rather, their lack thereof—and their inability to demonstrate they can put their children's needs before their own. Without rehashing all of the parents' past conduct, a few early incidents are indicative of the overall issues facing these parents. In October 2015, the mother, fleeing an argument with the father, drove while she was significantly intoxicated with the children buckled in the front seat of her car. She initially denied she was intoxicated, claiming she had "had a couple of shots" but "did not feel drunk and that she would never drive drunk with the kids in the car."

However, the mother's preliminary breath test showed her blood alcohol level was .239%—three times the legal limit.

Two more incidents occurred before the State filed a children-in-need-of-assistance (CINA) petition in December 2015—it was reported that, among other things, during the summer the younger child consumed the father's alcohol after being left unsupervised, and the older child reported another domestic dispute between the parents. However, particularly revealing is the father's arrest for public intoxication when he attempted to attend the February 2016 CINA adjudicatory hearing and the mother presented with a black eye at the same hearing. The children were removed from the parents' care at that time and have not been returned since.

By the time of the permanency hearing in January and February 2017, the parents reported they were both sober—the father since September 2016 and the mother since May 2016. However, in October 2016, the parents missed a court hearing, among other things, after the mother sustained an eye injury. Both parents insisted she fell off the front steps, and they claimed to have missed the court hearing, not because she had a black eye and did not want the court to see it, but because of a miscommunication by the mother's attorney. Then, in November 2016, police were called to the parents' home after the father would not let the mother in the house following an argument. Officers indicated the father was intoxicated.

Though things appeared smoother thereafter, the parents still struggled to meet other expectations imposed by the court and the Iowa Department of Human Services (DHS). In January 2017, the mother admitted that she had

known since at least November of 2016 that she was expected to attend AA meetings, but she still had not done so. The father had not attended any meetings either. The parents were also to re-engage in marriage counseling, but they had not done so, testifying they were going to make an appointment. Dishonesty was still an issue; at the January 2017 hearing, the mother initially testified a friend had driven the parents to the courthouse, only to later admit that they actually had driven themselves, even though neither had a valid driver's license. Notably, the mother was asked if she believed her relationship with the father needed to be worked upon before the children were returned to her care, and she answered, "Not necessarily, no." The mother continued to have a difficult time admitting that domestic violence had occurred in the parents' relationship. She initially described the problems in the parents' marriage as mere "arguing," and she denied there was actual physical altercations between them until pressed on the issue.

At the April 2017 termination-of-parental-rights hearing, the mother testified that since the permanency hearing, she and the father had attended four counseling sessions, and she believed they had addressed their relationship issues. Yet, she could not state for certain that she or the father had even told their marriage counselor there had been domestic violence in their relationship. The father testified he believed he and the mother had progressed enough in their marriage counseling that "the domestic violence issue [had been] addressed," explaining he now "realized that it's wrong." He also believed that so long as he was sober, domestic violence was no longer an issue. The mother did not believe she was an alcoholic; she stated she just liked to drink. She

essentially testified she would not be in treatment but for the case requirements that she attend. She also initially testified she did not believe the father was an alcoholic, but she then qualified her statement, explaining that he was an alcoholic but was no longer drinking. Similarly, the father admitted he was an alcoholic but did not believe the mother was. Asked what his plan to maintain his sobriety was, the father simply answered, "Just to stick with being sober." Neither parent was attending any AA meetings.

The parents testified at various hearings that most of their shortcomings in meeting the court and DHS's expectations were due to their lack of transportation or being too busy. Though their city offers public transportation, the parents never considered that as an option. Additionally, as pointed out by the children's guardian ad litem (GAL) at the termination-of-parental-rights hearing, neither parent was truly busy; both parents were unemployed. Even assuming the parents' claimed sobriety date is accurate, they still participated minimally in other available and essential services despite their own access to public transportation and time.

While we sincerely hope the parents are now sober and working to mend the problems plaguing their marriage, we do not believe the parents were honest about the date of their sobriety, if they are truly sober. There is certainly nothing in the record but the parents' own self-serving statements to support their claimed dates of sobriety. Given the parents' history of denying the occurrence of domestic violence and alcohol abuse, they are not reliable reporters. Throughout the case, the parents have minimized the issues they face. Neither seemed to believe there was anything that even needed to be addressed,

despite blackened eyes and visits by the police. No mention of domestic violence or alcohol issues was made by either parent on their social-history reports. They minimized their alcohol use and did not even mention the domestic abuse to their counselors. There is no question, as the GAL aptly put it, that the parents had "checked off some boxes" in their case; however, there was no evidence they "internalized anything that [the service providers and others] tried to teach them to better their family and try to reunify their family." We believe this was the juvenile court's assessment as well; though there are no express credibility findings in the termination-of-parental-rights order, it is implicit the court, as the trier of fact, did not find the parents to be credible. *See In re Sievers Family Revocable Trust*, No. 16-1483, 2017 WL 2183210, at *2 (Iowa Ct. App. May 17, 2017); *Feuk v. Feuk*, No. 12-1699, 2013 WL 1749802, at *1 (Iowa Ct. App. Apr. 24, 2013); *see also Schutjer v. Algona Manor Care Ctr.*, 780 N.W.2d 549, 560-61 (Iowa 2010) (applying standard to "work backward" and ascertain implicit credibility findings in agency's decision).

Iowa Code section 232.116(1)(f) provides termination may be ordered when there is clear and convincing evidence that a child age four years or older who has been adjudicated a child in need of assistance (CINA) and removed from the parents' care for at least twelve of the last eighteen months, or the last twelve consecutive months, cannot be returned to the parents' custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f). The first three elements of paragraph (f) are not in dispute; rather, the parents assert on appeal that the State failed to prove the fourth element. *See* Iowa Code § 232.116(1)(f)(4) ("There is clear and convincing evidence that at the present

time the child cannot be returned to the custody of the child's parents as provided in section 232.102.").  To satisfy its burden of proof, the State must establish "[t]he child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance."  *See id.* § 232.102(5)(2); *see also In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988).  "The threat of probable harm will justify termination of parental rights, and the perceived harm need not be the one that supported the child's initial removal from the home."  *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992).  "At the present time" refers to the time of the termination hearing.  *In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014).

Here, reviewing the record de novo and the juvenile court's thoughtful and thorough ruling, we agree with the juvenile court that the State proved, by clear and convincing evidence, the children could not be returned to the parents' care at the time of the termination hearing.  The concerns that led to the CINA adjudication were still concerns at the time of the termination-of-parental-rights hearing.  Consequently, we affirm the juvenile court's finding that the State proved the statutory grounds for termination found in section 232.116(1)(f).

We also agree with the juvenile court, in reviewing the record de novo, that termination of the parents' parental rights is in the children's best interests. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."  *P.L.*, 778 N.W.2d at 41.  Moreover, "[i]nsight for the determination of the [children's] long-range best interests can be gleaned from 'evidence of the

parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (citation omitted). Here, the children have had to witness domestic violence almost all of their lives with their parents' denials thereof. Since at least 2014, their children have not had a stable home life, and their living conditions only worsened over time. The parents have been given ample time to address their issues and demonstrate that they could provide and sustain a safe, stable, violence-free home for the children, but they squandered it, only really asserting an effort towards the end of the case, and even those efforts were limited. Until the parents are honest with their counselors about their use, relapses, fights, and physical altercations, it is unlikely that the parents' issues can be fully addressed and that they can sustain whatever progress they have made. These parents still have much work ahead of them, and their children cannot wait in limbo hoping someday their parents will put their needs first. *See In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). Giving "primary consideration to the [children's] safety, to the best placement for furthering the long-term nurturing and growth of the [children], and to the physical, mental, and emotional condition and needs of the [children]," *see* Iowa Code § 232.116(2), we conclude termination of the parents' parental rights was in the children's best interests.

### III. Conclusion.

Because we agree with the juvenile court's finding that the State proved the statutory grounds for termination found in section 232.116(1)(f) and

termination of the parents' parental rights is in the children's best interests, we affirm the juvenile court's ruling terminating the parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**