# IN THE COURT OF APPEALS OF IOWA

No. 18-0485
Filed May 16, 2018

**IN THE INTEREST OF Z.S.,**
**Minor Child,**

**D.S., Father,**
         Appellant.

_____

Appeal from the Iowa District Court for Webster County, Angela L. Doyle, District Associate Judge.

The father appeals the adjudication of his child as a child in need of assistance and the continued placement of the child in the mother's care and custody. **AFFIRMED.**

Douglas E. Cook of Cook Law Office, Jewell, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Sarah J. Livingston of Thatcher, Tofilon & Livingston, P.L.C., Fort Dodge, guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**POTTERFIELD, Judge.**

The father appeals the adjudication of his child, Z.S., as a child in need of assistance (CINA) and the continued placement of the child in the mother's care and custody. The father asserts there is not clear and convincing evidence to adjudicate Z.S. CINA pursuant to Iowa Code section 232.2(6)(c)(2) and (6)(f) (2017). He also claims the continued placement of Z.S. in the mother's care is not in the child's best interests and argues the family should be returned to its previous equally-shared care schedule.

We review CINA proceedings de novo. *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001). In doing so, "[w]e review 'both the facts and the law, and we adjudicate rights anew.'" *Id.* (citation omitted). "As in all juvenile proceedings, our fundamental concern is the best interests of the child." *Id.*

As "[t]he grounds for a CINA adjudication do matter," we consider whether there is clear and convincing evidence to support adjudication under both of the subsections. *In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014); *see also* Iowa Code § 232.96(9). We start with section 232.2(6)(c)(2), which requires a determination that the child "has suffered or is imminently likely to suffer harmful effects as a result of" "[t]he failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child." The definition of "harmful effects" is broad and generally "pertains to the physical, mental or social welfare of a child." *J.S.*, 846 N.W.2d at 42 (citation omitted).

Here, the father took Z.S. for his regularly scheduled month-long visit with her in October 2016 but then failed to return the child to the mother for over four months. During that time, he took the child out of the state and cut off all contact

between the four-year-old child and the mother. When the father returned the child on March 1, 2017 (pursuant to a court order), the child exhibited adverse effects from the separation. According to the social worker's testimony, the child "was harming herself, hitting her head, banging her head on walls, on the floor, and not listening to mom." Additionally, the mother testified that when Z.S. first returned, she "wouldn't leave [the mother's] side," "was scared to play with other children," "would wake up in the middle of the night having night terrors," and would "scream[] after she went to the restroom searching for [the mother] thinking [the mother] left her." This evidence supports the juvenile court's determination Z.S. suffered harmful effects to her physical, mental, or social wellbeing while in the father's care.

Pursuant to section 232.2(6)(f), a child is a CINA when they are "in need of treatment to cure or alleviate serious mental illness or disorder, or emotional damage as evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or other and whose parent . . . is unwilling to provide such treatment." After Z.S.'s return to her mother, Z.S. began seeing a licensed mental-health counselor who diagnosed Z.S. with adjustment disorder with disturbance of emotions and conduct. The counselor recommended Z.S. receive treatment in the form of parent-child interaction therapy with both parents, but only Z.S. and the mother engaged in the service. At the CINA hearing, the father testified he did not believe the counselor's diagnosis was correct, did not support Z.S.'s engagement in mental-health treatment, and would not take any part in the treatment. The father maintained he could not engage in the therapy because it was against his religion, but he had not spoken to the counselor about

her methods. At the disposition hearing, the court asked the father if he would be open to participating in therapy or counseling that was faith-based through one of his pastors, and the father initially indicated he would. However, shortly thereafter, when the father was asked if he agreed with Z.S.'s current diagnosis, the father testified he did not agree with it and would "[a]bsolutely not, never" support efforts to treat Z.S. for that diagnosis. The father was then asked if there was anything that would change his opinion on Z.S. getting mental-health treatment, and the father testified, "You would have to kill me, it's never going to happen." Based on Z.S.'s actions of harming herself—"hitting her head, banging her head on walls, on the floor"—and the father's sworn refusal to allow Z.S. to participate in treatment, clear and convincing evidence supports an adjudication pursuant to section 232.2(6)(f). *See In re N.C.*, 551 N.W.2d 872, 874 (Iowa 1996) (affirming the adjudication under subsection (6)(f) when the parents refused to provide the treatment the experts recommended).

Next, the father argues it is not in Z.S.'s best interests to remain solely in her mother's care. While the father maintains the juvenile court should allow the parents to return to sharing care of Z.S., we cannot agree. The last time the father had care of Z.S., he left the state with her and cut off all contact between Z.S. and the mother. Even after he returned with her, the father has been less than forthcoming about where he and Z.S. spent their time and what they were doing while away. During his testimony, the father indicated he did not believe he had done anything wrong when he absconded with Z.S. Additionally, after Z.S. returned, she reported to her mother and a social worker that her father had used a belt to hit her on her bare buttocks multiple times during the time they were away.

The child reported the hits resulted in bruises and made it painful to sit.  While the father has the right to use reasonable corporal punishment, *see In re B.B.*, 598 N.W.2d 312, 315 (Iowa Ct. App. 1999), there are limits to what is proper.  The father has not taken any steps to learn what those limits are or to ensure he will not use unnecessary force again in the future.  *See In re D.B.*, No. 17-0740, 2017 WL 4317337, at *6 (Iowa Ct. App. Sept. 27, 2017) ("Until the root of the abusive behavior is resolved, all children in the home remain at risk of imminent harm.").

Because there is clear and convincing evidence to support the adjudication of Z.S. pursuant to subsections 232.2(6)(c)(2) and (6)(f) and it is in Z.S.'s best interests to remain in the mother's care, we affirm the juvenile court.

**AFFIRMED.**