470 N.W.2d 343 (1991)
In the Interest of B.L., A Minor Child,
H.L., Natural Mother, Appellant,
D.B., Natural Father, Appellee,
State of Iowa, Appellee (Two Cases).
B.L., A Minor Child, Plaintiff,
v.
IOWA DISTRICT COURT FOR JOHNSON COUNTY, Defendant.
Nos. 90-679, 90-1530 and 91-393.
Supreme Court of Iowa.
May 15, 1991.
*344 Hilary Strayer, Iowa City, for mother.
Emmit J. George, Jr., Iowa City, for father.
Bonnie J. Campbell, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., John M. Parmeter, Asst. Atty. Gen., and Kathrine S. Miller-Todd, Asst. Atty. Gen., for State.
Maurine A. Braddock of Honohon, Epley, Haymond & Braddock, Iowa City, guardian ad litem for child.
Daniel L. Bray, Iowa City, for defendant.
Considered by HARRIS, P.J., and SCHULTZ, CARTER, LAVORATO and ANDREASEN, JJ.
SCHULTZ, Justice.
We have consolidated two appeals and a certiorari action that challenge the juvenile court orders in a child-in-need-of-assistance (CINA) proceeding involving B.L., a nine-year-old boy with behavior problems. In the first appeal, H.L., the mother, appealed orders that continued placement of B.L. with his father, D.B., but did not determine whether the child could be returned to her. Later, the child commenced an original certiorari action in this court, maintaining that the juvenile court acted illegally by ruling that it did not have jurisdiction to order a report on the child's status and to schedule this report for in-court review during the pendency of an appeal. A limited remand was ordered in the certiorari action, which led to the mother's second and final appeal, challenging a ruling on remand which dismissed the case. On the first appeal, we affirm the court of appeals' decision and reverse and remand to the juvenile court; we sustain the writ of certiorari; and we reverse and remand on the second appeal.
B.L. was born in 1982 to unwed parents. The mother raised the child from birth until age seven. The mother had very limited involvement with the father who was not even aware of B.L.'s birth until B.L. was about one-year old. Thereafter, the father had very little contact with the boy. The father did not pay support until B.L. was over six years of age, and he was forced to do so following a paternity action. The father never requested nor received any custodial or visitation rights, except for the rights received in this juvenile proceeding.
In 1988, the mother was experiencing problems with B.L. and B.L.'s older half-sister, a child also born out of wedlock.
*345 The Department of Human Services (department) was assisting the family and filed a CINA petition in December 1988. B.L.'s father learned of these proceedings and appeared at the hearing. The children were found to be in need of assistance although they were allowed to remain with their mother under the protective supervision of the department. In June 1989, the sister was placed in a residential group home and, by an order modifying disposition, B.L. was placed in his father's home.
In January 1990, the mother filed an application for modification of the prior dispositional order and requested that custody of B.L. be restored to her. The juvenile court denied her request and approved the department's goal of keeping B.L. in his father's home. This resulted in the first appeal. Later, we will discuss the proceedings that preceded the certiorari action and second appeal.
I. First appeal. The mother's request for a modification of the dispositional order requires a determination of which statutory provision was utilized by the juvenile court in placing B.L. with his father. After a dispositional hearing, the court may enter an order either "permitting the child's parent, guardian or custodian at the time of the filing of the petition to retain custody of the child ...," Iowa Code § 232.101(1),[1] or "transferring the legal custody of the child to ... [a] relative or other suitable person." Iowa Code § 232.102(1)(a).
The goals of a child's placement and the next step in juvenile proceedings vary with the type of placement. If a child is placed pursuant to section 232.101, the child remains at home with the parent and may be subject to the terms and conditions set by the court, such as special treatment for health concerns, for a period of no more than eighteen months. Iowa Code § 232.101. Conversely, placement of a child pursuant to section 232.102 takes the child out of his or her home. If a child is placed with a relative, the court may direct the department to provide services to the parent "in order to enable them to resume custody of the child." Iowa Code § 232.102(6). Additionally, the court is required to hold periodic dispositional review hearings "in order to determine whether the child should be returned home" and whether "[t]he placement shall be terminated and the child returned to the child's home if the court finds by a preponderance of the evidence that the child will not suffer harm in the manner specified in section 232.2, subsection 6." Iowa Code § 232.102(7).
The goal of B.L.'s placement with the father and the appropriate steps to be taken next in the juvenile proceedings are central issues of this appeal. In its dispositional hearing the juvenile court did not specify which section it utilized in placing B.L. in his father's home. The father claims that B.L.'s placement with him was made under section 232.101(1) pursuant to his status as a parent. The express words of subsection 1 state that the court may permit a parent "to retain custody." The verb "retain" means "to continue to hold... and to keep." Black's Law Dictionary 1479 (rev. 4th ed. 1968). Therefore, to qualify as a parent who may retain custody under section 232.101(1), B.L.'s father must show not only that he is a parent, but also that he had a right to custody of B.L.
Previously, B.L.'s father never had actual custody of B.L. Therefore, we must determine whether the father had any legal custody rights. The legislature has prescribed the rights of legal custody and visitation of a child born out of wedlock as follows:
The mother of a child born out of wedlock whose paternity has not been acknowledged... has sole custody of the child unless the court orders otherwise. If a judgment of paternity is entered, the father may petition for rights of visitation or custody in an equity proceeding separate from any action to establish paternity.
Iowa Code § 675.40. The first sentence of this section places sole custody of a child with the mother unless the paternity has *346 been "acknowledged." The second sentence allows the father to petition the court for custody rights after paternity is legally established. In this case, B.L.'s father admits that he never sought nor obtained visitation or custody rights in any legal action. He bases his claim of an existing custody right on his "acknowledgment of paternity." The mother claims that the father's acknowledgment came too late to provide custody rights.
Section 675.40 allows the mother the right of sole custody in the absence of the father's acknowledgment of paternity. This statute does not specify when the mother's right of sole custody commences. However, the best interests of a child dictate that the permissible time period during which the father may acknowledge paternity be short to eliminate prolonged uncertainty about the identity of the child's custodian. Common sense leads us to the conclusion that the legislature never intended to allow the putative father to silently stand back for an extended period of time, acknowledge paternity of a child at a convenient time, and then claim joint custodial rights. We construe section 675.40 as placing sole custody of a child born out of wedlock with the mother unless the father steps forward and acknowledges paternity of the child within a reasonable time. Once acquired, the mother retains sole custody until a court orders otherwise.
In this case, the issue of whether the father had any legal custody rights does not present a close question. The father's alleged acknowledgment of paternity came only after a suit for support was brought against him and blood tests were taken. By this time, the mother had already acquired rights of sole custody. The father may then petition the court to acquire visitation and custody rights pursuant to the second sentence of section 675.40. In this case, the father never petitioned for any rights of custody or visitation. Thus, this case differs from In re J.R.H., 358 N.W.2d 311 (Iowa 1984), in which the father acknowledged paternity from birth and shared joint physical custody of the children with the mother. Id. at 319.
Accordingly, we hold that B.L. was not placed in his father's home pursuant to section 232.101. Rather, the placement was appropriate under section 232.102(1)(a), because the father was a relative. In another case involving a noncustodial parent, we stated the following:
Although the wisdom of a particular order placing children with a noncustodial parent for a prolonged period may be questionable, the juvenile court has authority to transfer custody to the noncustodial parent after a dispositional hearing or modification proceeding. Any such placement is subject to the constraints in section 232.102, including the goal of returning the child to the original custodian as quickly as possible.
In re Interest of Blackledge, 304 N.W.2d 209, 214 (Iowa 1981). In this case, the juvenile court should have conducted a hearing pursuant to section 232.102(7) to decide whether the child should be returned to the original custodial parent. Consequently, we reverse and remand for a hearing pursuant to Iowa Code section 232.102(7).
II. Juvenile court authority during appeal. While the mother's appeal was pending, the child filed a motion requesting the juvenile court to enter an order requiring the department to prepare a report for the court on the child's status and schedule the report for an in-court review. The motion suggested that the interests of the child required a monitoring of his situation so that his representative could properly evaluate the propriety of placement with the father. The juvenile court promptly denied the child's motion because jurisdiction was with the appellate court.
The child then commenced an original certiorari action in this court. B.L. contended that the defendant district court, acting as a juvenile judge, had continuing jurisdiction during the pendency of an appeal to order the department to report on his welfare and issue collateral orders necessary to protect his best interests. After the writ of certiorari was filed, this court granted a limited remand to the juvenile court allowing it to consider application for a status report on B.L. during the pendency of this appeal. After all briefs had been filed in this court, the defendant district *347 court held hearings on the need for a status report on B.L. and moved to dismiss the child's certiorari action as moot.
The child's certiorari action is moot. We conclude, however, that this case presents questions of public interest and that it would be helpful for juvenile courts to receive guidance about their obligation for monitoring juveniles during the appeal period. Therefore, we overrule the district court's motion to dismiss and address the issue of the jurisdiction of the district court while the matter is on appeal.
The general rule is that the trial court loses jurisdiction over the merits of the controversy when an appeal is perfected. Hulsing v. Iowa Nat'l Mut. Ins. Co., 329 N.W.2d 5, 7 (Iowa 1983). An exception to this rule is that a trial court can retain jurisdiction to proceed on collateral issues not affecting the subject matter of the appeal. In re Estate of Tollefsrud, 275 N.W.2d 412, 417-18 (Iowa 1979). We believe that the legislature has provided an even clearer exception in juvenile matters. Iowa Code section 232.133(3) provides that an appeal "shall not suspend the order of the juvenile court regarding a child and shall not discharge the child from the custody of the court ... unless the appellate court otherwise orders on application of an appellant." We believe that this section grants jurisdiction to the juvenile court during the pendency of an appeal. It is the extent of that jurisdiction that presents a more difficult question.
A Minnesota appeals court gave a sensible answer to this question when they stated:
Juvenile courts have continuing jurisdiction over matters not directly involved in or essential to the appeal. It retains a residuum of jurisdiction to handle issues involving the child's welfare. The reason for this is common sense. The juvenile court has original and exclusive jurisdiction in neglect proceedings. Our review function is not designed to supervise or control juvenile court cases with their assorted complications. "The circumstances of a child's life change more rapidly and are subject to a wider range of external factors than is true for most adults. Children move from childhood to adolescence to adulthood in a relatively short period of time. In addition, total family situations are often fluid, with the child being able to exercise little control over his or her environment." ABA, Juvenile Justice Standards Relating to Appeals and Collateral Review, Commentary, § 6.1 (1980).
In re Welfare of C. Children, 348 N.W.2d 94, 99 (Minn.Ct.App.1984) (citations omitted). We conclude that the jurisdiction of juvenile courts is not suspended while appeals are pending. Matters that are not directly involved in the appeal may be dealt with by the juvenile court during the appeal process.
Applying the Minnesota court's principles to this case, we believe that the juvenile court had authority to entertain B.L.'s request for a status report and an in-court review. The issue on appeal directly involves the applicability of section 232.102; therefore, we do not intend to imply that the juvenile court would have authority to order reports mandated by subsection 232.102(7). However, the request for a status report and review presents a collateral issue not directly affecting the issue on appeal. The juvenile court expressed reservations concerning the father's "colorful and somewhat checkered past," and the problems in his life, including a struggle with sobriety. The record indicates that this is an understatement, but that the father was turning things around. B.L. also has severe behavioral problems that we need not describe. Thus, we find that this case requires close monitoring and the court had jurisdiction to monitor the child's well-being as requested.
Accordingly, we reverse the order of the juvenile court which denied jurisdiction. Our previous limited remand obviates the need for further remand.
III. Dismissal of the proceedings. As previously noted, we granted a limited remand in response to the child's petition for writ of certiorari. We provided for a limited remand to the juvenile court "to the extent that it may consider applications with respect to the subject child during the pendency of this appeal." Following a *348 hearing on the remand order, the juvenile court concluded that the CINA proceedings be dismissed. On this appeal, the issue is whether this limited remand authorized the juvenile court to dismiss the CINA proceeding.
Essentially, the juvenile court's dismissal determined that B.L.'s father and his wife have become effective parents for him and that the child is no longer in need of assistance. The ruling recognizes that the case plan has been directed toward a placement with the father rather than toward reunification of B.L. and his mother. However, the court-approved case plan recognized custody rights that the father did not possess. In addition, the case plan and procedures utilized totally ignored the mother's right to sole custody of B.L.
The juvenile court's dismissal becomes effective after a thirty-day waiting period to allow the parents to litigate custody in district court and then becomes a final order. The effect of this dismissal order denies the mother the opportunity for a hearing to regain her right to sole custody of B.L. If the mother fails to regain custody of B.L. at a hearing, then Iowa Code sections 232.103 and 232.104 should be applied. These sections were not applied. Under section 232.103(4), the court may terminate the proceedings and release the child; however, the child would be released to the legal custodian. Under section 232.104(1), the court could conduct a permanency hearing to consider permanent placement of the child. In this case, the hearing resulting in dismissal of the proceedings was not held under either section 232.103 or 232.104. Both sections require a motion, notice, and an opportunity to be heard.
Furthermore, the matter addressed by the juvenile court in the dismissal directly involved issues on appeal. The court of appeals, four days after the juvenile court ruling, and now we, on appeal, hold that the father did not have an established custody right, except under the juvenile court dispositional order which was authorized by section 232.102(1)(a) rather than section 232.101(1). Consequently, we find that the juvenile court did not have authority to dismiss the case and nullify the effects of appellate review.
Accordingly, we reverse the order of the juvenile court dismissing this action and remand it for proceedings consistent with division I.
IV. Summary. In the first appeal, we affirm the court of appeals' decision. We reverse the juvenile court's order and remand for the purpose of conducting a hearing pursuant to Iowa Code section 232.102(7). We hold that the juvenile court had jurisdiction to consider a report on the child; thus, we sustain the child's writ of certiorari. In the second appeal, we remand to the juvenile court to reverse dismissal of this case during the pendency of an appeal.
DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.
WRIT SUSTAINED.
REVERSED AND REMANDED.
NOTES
[1] All references to the Code are to the 1989 edition.