# IN THE SUPREME COURT OF IOWA

No. 10–0414

Filed May 3, 2013

**IN RE THE DETENTION OF PAUL MICHAEL BLAISE**

**PAUL MICHAEL BLAISE**,

Appellant.

Appeal from the Iowa District Court for Lee (North) County, Michael J. Schilling, Judge.

On appeal from his adjudication as a sexually violent predator, respondent contends he was denied a speedy trial and his trial should have been bifurcated. **AFFIRMED.**

Philip B. Mears of Mears Law Office, Iowa City, for appellant, and Paul Blaise, Cherokee, pro se.

Thomas J. Miller, Attorney General, and Elisabeth S. Reynoldson, Susan R. Krisko, and John B. McCormally, Assistant Attorneys General, for appellee.

**HECHT, Justice.**

A respondent in Iowa Code chapter 229A proceedings alleges his trial counsel was ineffective in failing to argue that the respondent's speedy trial rights were violated and that his trial should have been bifurcated. He also contends the district court inappropriately allowed the State to misrepresent the evidence at trial. Because we conclude the respondent has not established he was prejudiced by his attorney's actions, we affirm the judgment of the district court.

## I. Background Facts and Proceedings.

As S.E. walked through River View Park in Fort Madison in October 2005, Paul Blaise, who was collecting cans in the park, approached her and began asking her questions. He asked her if she was married, if she was sexually active, and if she would engage in anal sex. He wondered if she had ever been the victim of a violent crime, if she would use lubrication to have anal sex, if she would take her clothes off or have sex if someone asked her or threatened to hurt her. Although S.E. grew increasingly uncomfortable and quickened her pace, Blaise kept up with her while continuing to ask "hypothetical" questions. S.E. tried repeatedly to change the conversation and eventually ran away from Blaise and asked another pedestrian to walk her to her car. After warning another female pedestrian that "there was someone in the park talking about rape and guns and all kinds of sexual stuff," S.E. called the police. Officers located Blaise in the park and discovered he was carrying a gun. Blaise ultimately pled guilty to first-degree harassment and received a two-year sentence.

While Blaise was incarcerated for the harassment offense, the State sought to have him committed as a sexually violent predator (SVP) under Iowa Code chapter 229A. After a trial in January 2007, a jury

found Blaise was an SVP and he was ordered committed for treatment. Blaise appealed. In December 2007, Blaise sought a stay of his appeal and filed a motion for a new trial in the district court, alleging the doctor who had testified for the State in his SVP trial was an "admitted mentally ill pedophile with serious difficulty controlling his behavior." On February 28, 2008, we granted the stay and issued a limited remand which provided:

> The motion for limited remand is granted for a period of sixty days to allow the district court to address the respondent's motion for new trial and the State's resistance. Counsel for the parties shall promptly inform the district court about this order.
>
> The clerk of district court shall transmit a certified, file-stamped copy of the district court's remand ruling to the clerk of the supreme court. Within fourteen days of the date of the district court's remand ruling, the parties shall file statements with the supreme court addressing the status of this appeal.
>
> Further appellate proceedings in this case are stayed during the above-stated limited remand period. This court retains jurisdiction.

On remand, the district court granted Blaise's motion and set a new trial date for August. The State appealed from the district court's grant of new trial. On July 14, Blaise executed a speedy trial waiver, which was filed with the district court on July 28. On July 31, we combined the two appeals, stayed the proceedings in the district court, and transferred the case to the court of appeals. The court of appeals issued its decision on April 22, 2009, affirming the district court's grant of a new trial.[1] Procedendo issued on May 21.

---

[1] Blaise had also argued that his first trial should have been bifurcated. The court of appeals declined to address that issue in light of its determination that a new trial was warranted. *See In re Det. of Blaise*, No. 07–0188, 2009 WL 1066767, at \*8 (Iowa Ct. App. Apr. 22, 2009).

On the day the new trial commenced, Blaise's counsel moved to bifurcate the trial, basing his argument on the potential for "jury confusion." The motion was denied.

During the trial, the State offered extensive testimony from Blaise about his prior misconduct. The testimony included a wide range of past bad acts starting with behavior when he was a child, including setting a vehicle on fire, shooting another child in the face with a BB gun, and sexually assaulting a roommate while institutionalized. The State questioned Blaise about his sexual fantasies, such as exposing himself to women, anal intercourse, sexual intercourse with virgins, and assaulting female prison staff members.

The State also offered Blaise's testimony about his conviction for sexual abuse of a nine-year-old girl, and burglary and criminal mischief charges. The details of each of these crimes were revealed to the jury, including how he forced himself on and held down the nine-year-old and digitally penetrated her vagina with enough force to cause scarring, and how he damaged the burglary victim's car because she refused to have sex with him. The State also elicited testimony about his arrest for lifting a girl's skirt on the street, as well as charges of identity theft and theft in the fifth degree.

In addition, the State elicited his testimony about threats he had made to staff while he was in jail for sexual abuse and read from an extremely violent and vicious letter he wrote to a female staff member, which threatened to torture her unless she had sex with him. The State's questioning of Blaise covered dozens of institutional infractions, including harassing female staff members, defecating on the floor, exposing himself, threatening to rape women, throwing semen at staff,

masturbating in the presence of staff, and filing a lawsuit against a staff member requesting she wear different clothes so he could "see her butt."

Regarding his conversation with S.E. in the park, Blaise testified he was "looking for a date" when he first began talking to her, but that as soon as he found out she did not have sex "on the side" he was no longer interested in her sexually.

The State's expert, Dr. Amy Phenix, testified that the conduct resulting in Blaise's harassment conviction was sexually motivated. She also testified that Blaise suffered from various mental abnormalities and that he will more likely than not commit sexually violent offenses if he is not confined. Blaise's expert, Dr. Stephen Hart, testified that he could not be sure that Blaise's interaction with S.E. was sexually motivated. Dr. Hart's opinion relied on the fact that there was no evidence that Blaise was sexually aroused during the conversation and on the notion that Blaise's bad behavior and sexual acting out was a way for Blaise to express anger and frustration rather than a way to seek sexual gratification.

The jury again concluded Blaise was an SVP, and Blaise was again ordered committed. Blaise appealed. He argues he was denied a speedy trial, his trial should have been bifurcated, and the prosecution misstated the evidence during trial.

## II. Scope of Review.

Normally our review of a claim of a speedy trial violation is for correction of errors at law. *State v. Miller*, 637 N.W.2d 201, 204 (Iowa 2001). Our review of district court rulings on motions to bifurcate is usually for abuse of discretion. *Beeman v. Manville Corp. Asbestos Disease Comp. Fund*, 496 N.W.2d 247, 251 (Iowa 1993). However, because Blaise's bifurcation claim and speedy trial claim are both raised

in the context of ineffective-assistance-of-counsel claims, our review is de novo. *See Everett v. State*, 789 N.W.2d 151, 155 (Iowa 2010). A district court's evidentiary rulings are reviewed for abuse of discretion. *State v. Hubka*, 480 N.W.2d 867, 868 (Iowa 1992).

**III. Discussion.**

**A. Speedy Trial.** A person subject to civil commitment pursuant to Iowa Code chapter 229A is entitled to a trial for the determination of whether the respondent is an SVP within ninety days after the probable cause hearing. Iowa Code § 229A.7(3) (2007); *In re Det. of Fowler*, 784 N.W.2d 184, 190 (Iowa 2010). Similar to criminal cases, if the respondent's speedy trial rights are violated, he is entitled to have his case dismissed. *In re Det. of Fowler*, 784 N.W.2d at 190–91. Blaise contends his speedy trial rights were violated because his new trial was held more than ninety days after procedendo issued after his first appeal.[2] Because his attorney did not raise the speedy trial argument in the district court, Blaise contends his trial counsel was ineffective.

Although Blaise executed and filed a waiver of speedy trial while the case was on remand in the district court after his motion for new trial was granted, he contends his waiver was ineffective or invalid because the district court did not have jurisdiction. He asserts that our limited remand only gave the district court the authority to hear and rule on the motion for a new trial—not the authority to set a new trial date or accept

---

[2]In criminal cases, we have concluded that a defendant is entitled to a speedy retrial after a successful appeal. *State v. Hamilton*, 309 N.W.2d 471, 475 (Iowa 1981). "When a case on appeal is remanded, absent waiver of the right to a speedy trial, the period during which the defendant must be tried commences on the date procedendo issues." *Id.* Although we have not applied this principle to proceedings under chapter 229A, Blaise's argument assumes it does apply and the State does not challenge that assumption.

Blaise's waiver. He contends that when procedendo issued after the conclusion of the appeal, the speedy trial clock began running again, and without the execution of another waiver, his speedy trial rights were violated because his trial was not held within ninety days.

To succeed on a claim of ineffective assistance of counsel,[3] Blaise must establish that his trial counsel failed to perform an essential duty and that prejudice resulted. *See In re Det. of Crane*, 704 N.W.2d 437, 439 (Iowa 2005). Blaise must establish both prongs by a preponderance of the evidence. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). Blaise asserts his trial counsel was ineffective first for letting him sign a speedy trial waiver after the district court ruled on his motion for a new trial when he contends the district court did not have jurisdiction. He further argues his trial counsel was ineffective for failing to move for dismissal when the trial had not occurred within ninety days of procedendo.

Blaise asserts our caselaw demonstrates that on a limited remand, the district court loses jurisdiction as soon as it completes the task it was assigned in the remand order. Specifically, Blaise relies on *In re B.L.*, 470 N.W.2d 343 (Iowa 1991), to support his position. In that case, B.L. was born to unwed parents and had no contact with his father throughout his early life. *In re B.L.*, 470 N.W.2d at 344. When B.L. was

---

[3]We have not yet expressly held that a respondent in SVP proceedings has a right to "effective" assistance of counsel. In other cases, the State has conceded a respondent in chapter 229A proceedings has a right to effective counsel, and we noted that this concession was consistent with our due process jurisprudence. *In re Det. of Crane*, 704 N.W.2d 437, 438 n.3 (Iowa 2005). In this case, the State asserts we do not need to reach the issue because Blaise was provided adequate counsel. Because we conclude Blaise effectively waived his speedy trial rights we do not need to decide whether he is entitled to effective assistance of counsel or whether his trial counsel was ineffective for failing to raise the issue below.

about six years old, a CINA petition was filed and B.L. was removed from his mother's home and placed with his father. *Id.* at 345. B.L.'s mother filed an application for modification requesting that B.L. be returned to her custody. *Id.* The juvenile court denied her request, and B.L.'s mother appealed, contending the juvenile court relied on an inapplicable statute when placing B.L. with his father. *Id.* While the mother's appeal was pending, the child filed a motion with the juvenile court requesting continuing in-court review of the child's status. *Id.* at 346. The juvenile court denied the motion concluding it no longer had jurisdiction because of the mother's appeal. *Id.* B.L. filed a petition for writ of certiorari with our court contending the juvenile court had continuing jurisdiction despite the pending appeal. *Id.* We granted a limited remand to the juvenile court to hold a hearing on the need for a status report on B.L. and the issue of the court's continuing jurisdiction while the case was on appeal. *Id.* at 346–47. After the hearing on the remand order, the juvenile court concluded B.L.'s father had become a suitable parent to B.L. and dismissed the CINA proceeding. *Id.* at 347–48. B.L.'s mother appealed. *Id.* at 344. On the issue of the juvenile court's jurisdiction, we concluded the general rule is that

> the trial court loses jurisdiction over the merits of the controversy when an appeal is perfected. An exception to this rule is that a trial court can retain jurisdiction to proceed on collateral issues not affecting the subject matter of the appeal.

*Id.* at 347 (citation omitted). Thus, we determined it was appropriate for the juvenile court to receive and consider status reports on the child while the mother's appeal was pending. *Id.* However, we concluded the juvenile court exceeded its jurisdiction on the limited remand by dismissing the CINA proceedings. *Id.* at 348. Because we had remanded

for the juvenile court only to "consider applications with respect to the subject child during the pendency of th[e] appeal," we concluded the juvenile court's dismissal of the underlying CINA proceedings both "directly involved issues on appeal" and effectively cut off the mother's pending appeal. *Id.* at 347–48.

Blaise contends his case is similar in that the district court only had jurisdiction on remand to hear his motion for new trial and exceeded its jurisdiction when it set a new trial date. We disagree that *In re B.L.* controls this situation. In *In re B.L.*, the juvenile court addressed an issue we did not include in the order for limited remand and *dismissed* the case while the first appeal was still pending—effectively terminating the mother's appeal without allowing resolution of the issues she raised. In this case, the district court ruled on the issue for which the case was remanded and did not, by setting a new trial date, do anything to jeopardize the appeal still pending. " 'On remand . . . a lower tribunal . . . may generally take such action as justice requires as long as it does nothing inconsistent with the court's remand order.' " *Winnebago Indus. v. Smith*, 548 N.W.2d 582, 584 (Iowa 1996) (quoting 82 Am. Jur. 2d *Workers' Compensation* § 720 (1992)). The district court set a trial date within ninety days of its ruling that Blaise was entitled to a new trial. Because the limited remand required the parties to report back to the supreme court, the district court was well aware that the trial date could be stayed after the supreme court decided what to do with the information gained from the parties' status reports.

Further, as described above, our caselaw clearly establishes that during an appeal, the district court retains jurisdiction over matters collateral to the appeal. Blaise's waiver of speedy trial is such a collateral matter. The timing of Blaise's new trial did not affect the merits of the

appeal that was pending. Thus, the district court acted within its jurisdiction when it accepted Blaise's waiver.

"When a case on appeal is remanded, absent waiver of the right to a speedy trial, the period during which the defendant must be tried commences on the date procedendo issues." *State v. Hamilton*, 309 N.W.2d 471, 475 (Iowa 1981). To the extent Blaise argues that his speedy trial right renewed upon the issuance of procedendo after the appeal was completed, the State contends Blaise's waiver is distinguishable from the waiver deemed ineffective as to the new trial in cases such as *State v. Mosley*, No. 08–1437, 2009 WL 5125979 (Iowa Ct. App. Dec. 30, 2009). In *Mosley* the defendant waived his speedy trial rights before his first trial. *Mosley*, 2009 WL 5125979, at *1. After the case was appealed and the court of appeals remanded for a new trial, Mosley did not execute a written waiver of his speedy trial rights and his attorney asserted in each pretrial conference Mosley's refusal to waive his rights. *Id.* at *1. In this case, Blaise's waiver executed on July 14, 2008, clearly addressed his *new* trial. It was executed and filed after the district court granted his motion for new trial. Although the original appeal concluded and procedendo issued after Blaise's waiver, procedendo did not restart the speedy trial clock for the retrial because Blaise had already waived his challenge to its timeliness. Blaise had the ability to revoke his speedy trial waiver after the original appeal had concluded. But he never exercised the ability.

Accordingly, we conclude the speedy trial waiver was valid and Blaise's counsel did not breach his duty by failing to move for dismissal on speedy trial grounds.

Blaise also argues his trial counsel was ineffective for allowing him to execute an unnecessary speedy trial waiver because the State had

appealed from the grant of a new trial. Although Blaise's trial counsel could offer no reason he would have advised Blaise to sign the waiver if he had known about the State's appeal, we conclude Blaise has failed to demonstrate he was prejudiced by the waiver. In the proceedings below, all parties—the State, Blaise, and the district court—operated under the belief that Blaise had waived his right to a speedy retrial. What might have happened had the court and the parties not understood Blaise waived his speedy trial rights is conjecture. We cannot speculate that the State would not have commenced the retrial of Blaise within ninety days had the waiver not been executed. Under these circumstances, Blaise cannot meet his burden to show by a preponderance of the evidence he was prejudiced by his counsel's advice to sign the speedy trial waiver.

**B. Bifurcation.** To establish Blaise was subject to commitment under chapter 229A, the State was required to prove two elements: that Blaise was convicted of or charged with a sexually violent offense and that he suffers from a mental abnormality making him likely to commit further sexually violent offenses if he is not confined. *See* Iowa Code § 229A.2(11). A "sexually violent offense" is an offense listed in section 229A.2(10)(*a*) through (*f*) or "[a]ny act which, either at the time of sentencing for the offense or subsequently during civil commitment proceedings pursuant to this chapter, has been determined beyond a reasonable doubt to have been sexually motivated." *Id.* § 229A.2(10)(*g*). Because Blaise had recently pled guilty to first-degree harassment, a crime not identified in section 229A.2(10), it was the State's burden to prove beyond a reasonable doubt that the harassment was sexually motivated. *See id.*

On the morning of trial, Blaise's counsel moved to bifurcate the trial, seeking to separate the determination of whether Blaise's harassment of S.E. was sexually motivated from the determination of whether Blaise has a mental abnormality which, if untreated, would likely cause him to reoffend. Counsel argued that the trial should be bifurcated to avoid jury confusion, and the district court denied the motion. On appeal, Blaise contends his trial counsel was ineffective for failing to argue the trial should be bifurcated to avoid a due process violation.[4]

As discussed above, to succeed on a claim of ineffective assistance of counsel, Blaise must show both that his attorney breached a duty and that he was prejudiced by the breach. *See In re Det. of Crane*, 704 N.W.2d at 439. Because we find the relevant, admissible evidence that the harassment of S.E. was sexually motivated is overwhelming, we conclude Blaise was not prejudiced by his trial counsel's failure to argue for bifurcation on due process grounds.

We believe our resolution of this matter on the prejudice prong is appropriate despite the fact that the briefs of the parties appear to frame their appellate arguments around the breach prong. The State devotes the bulk of its appellate argument on the bifurcation issue to the proposition that the other acts evidence forming the basis for Dr. Phenix's opinion would have been admissible on the question of Blaise's sexual motivation even if the trial had been bifurcated. Contending the district court (1) would have properly admitted evidence of Blaise's other acts in a bifurcated trial, and (2) did not abuse its

---

[4]As noted previously, because of our resolution of this issue, we assume without deciding that Blaise is entitled to effective assistance of counsel in chapter 229A proceedings.

discretion in therefore declining Blaise's counsel's motion to bifurcate, the State's brief asserts that the manner in which the motion was made could not have constituted deficient performance. In a narrow sense, the State's argument may be read as a specific application of the general principle that counsel will not ordinarily be found to have breached a duty for failing to raise a claim lacking merit. *See In re Det. of Crane*, 704 N.W.2d at 439. This general principle is not easily separated or distinguished, however, from the corollary principle that counsel's failure to raise a claim lacking merit will not ordinarily be deemed prejudicial. *See State v. McDowell*, 622 N.W.2d 305, 307 (Iowa 2001) (observing both breach and prejudice may "depend entirely on the merit of the claim," and failing to distinguish breach from prejudice in explaining that if evidence is sufficient to submit an issue to the jury, failure to challenge that submission will not constitute ineffective assistance); *see also* George C. Thomas III, *History's Lesson for the Right to Counsel*, 2004 U. Ill. L. Rev. 543, 552–53 (discussing "just outcome" as basis for measuring both deficient performance and prejudice).

The difficulty in cleanly separating the breach-of-duty prong from the prejudice prong is well illustrated by Blaise's ineffective-assistance argument in this appeal. Recognizing the contested "other acts" evidence was extremely powerful, Blaise's appellate argument, much like the State's, is devoted to the question of whether the evidence would have been admissible on the issue of whether Blaise's interaction with S.E. in the park was sexually motivated had the trial been bifurcated. Contending the evidence would have been inadmissible in a bifurcated trial, Blaise argues that effective counsel would have filed a more timely motion and raised the due process argument he raises in this appeal. An implicit premise in Blaise's argument on the breach-of-duty prong is the

proposition that because the other acts evidence was so powerful, counsel's failure to present the proper constitutional ground for the motion resulted in prejudice under our ineffective-assistance standard. Because the breach of duty and prejudice inquiries are so closely interrelated here, and because the parties have both implicitly addressed the prejudice prong, we find no unfairness in resolving the ineffective-assistance issue on the prejudice prong, notwithstanding the State's lack of explicit argument regarding prejudice.

We acknowledge cases standing for the proposition that harmless-error arguments in criminal cases may generally be waived if not raised by the state.[5] *See, e.g., United States v. Williams*, 627 F.3d 324, 329 (8th Cir. 2010); *United States v. Hilton*, 386 F.3d 13, 18 n.5 (1st Cir. 2004); *United States v. Varela-Rivera*, 279 F.3d 1174, 1180 (9th Cir. 2002); *United States v. Giovannetti*, 928 F.2d 225, 226–27 (7th Cir. 1991). That approach ordinarily makes sense given the nature of the harmless-error inquiry. It is typically the state's burden to establish harmlessness of a claimed error and we would not lightly shoulder that burden for it. *State v. Elliott*, 806 N.W.2d 660, 669 (Iowa 2011). Whether and when, if ever, a court may raise the harmless-error inquiry on its own is a different question. In *Giovannetti*, the Seventh Circuit explained that in making

---

[5]We examine the treatment of harmless error on appeal in other jurisdictions as part of our inquiry as to how to treat the State's ineffective-assistance argument here. We recognize our harmless-error standard for criminal cases may differ substantively from our ineffective-assistance prejudice standard depending on the context. Some authority suggests the standards are substantively the same, diverging only insofar as the harmless-error test places the burden of showing lack of harm on the beneficiary of an alleged error, while the ineffective-assistance prejudice test places the burden of showing prejudice on the party requesting relief. *See State v. Sanchez*, 548 N.W.2d 69, 74 (Wis. 1996) ("The only difference between the two applications of the prejudice test is the burden."); 3 Wayne R. LaFave, et al., *Criminal Procedure* § 11.10(d), at 993 n.168 (3d ed. 2007). *But see* 7 LaFave, *Criminal Procedure* § 27.6(b), at 111 n.51 (discussing other approaches to burden allocation). We have not addressed and need not address here the substantive relationship between the standards under our precedent.

harmless-error determinations it will consider "[1] the length and complexity of the record, [2] whether the harmlessness of the error or errors found is certain or debatable, and [3] whether a reversal will result in protracted, costly, and ultimately futile proceedings in the district court." *Giovannetti*, 928 F.2d at 227. Numerous jurisdictions have followed or cited the Seventh Circuit approvingly in concluding they retain discretion to consider harmless error even when not otherwise raised.[6] *See United States v. Gonzalez-Flores*, 418 F.3d 1093, 1100 (9th Cir. 2005); *United States v. Torrez-Ortega*, 184 F.3d 1128, 1136 (10th Cir. 1999); *United States v. McLaughlin*, 126 F.3d 130, 135 (3d Cir. 1997); *United States v. Rose*, 104 F.3d 1408, 1414 (1st Cir. 1997); *Horsley v. Alabama*, 45 F.3d 1486, 1492 n.10 (11th Cir. 1995); *Lufkins v. Leapley*, 965 F.2d 1477, 1481–82 (8th Cir. 1992); *United States v. Pryce*, 938 F.2d 1343, 1347–48 (D.C. Cir. 1991) (Williams, J., opinion announcing judgment of the panel); *Heuss v. State*, 687 So. 2d 823, 824 (Fla. 1996); *State v. McKinney*, 777 N.W.2d 555, 561 & n.14 (Neb. 2010); *see also United States v. Dolah*, 245 F.3d 98, 107 (2d Cir. 2001) ("We have discretion to consider the harmlessness of an alleged error even though the Government has not argued this line of defense."), *abrogated on other*

---

[6]The federal courts of appeals have often grounded this authority in the mandatory language of Federal Rule of Criminal Procedure 52(a), and its statutory counterpart, 28 U.S.C. § 2111, which state that errors not affecting substantial rights *shall* be disregarded. *See, e.g.*, *United States v. Rose*, 104 F.3d 1408, 1414–15 (1st Cir. 1997); *United States v. Pryce*, 938 F.2d 1343, 1348 (D.C. Cir. 1991) (Randolph, J., concurring). Federal Rule of Civil Procedure 61 and Criminal Rule 52 share their origin in the language of the former 28 U.S.C. § 391 (repealed 1948) ("On the hearing of any appeal . . . the court shall give judgment . . . without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."). That language is consistent with the legislative directive of Iowa's harmless-error statutes. Iowa Code § 619.16 ("The court, in every stage of an action, must disregard any error or defect in the proceeding which does not affect the substantial rights of the adverse party . . . ."); *id.* § 624.15 ("No exception shall be regarded in an appellate court unless the ruling has been on a material point, and the effect thereof prejudicial to the rights of the party excepting.").

*grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Various courts, in addition to finding the *Giovannetti* analysis persuasive and the factors helpful, have expanded upon the approach. *Rose* observed that a proper exercise of discretion will necessarily involve the balancing of many elements. *Rose*, 104 F.3d at 1415. Several circuits have noted that chief among those elements is generally the second *Giovannetti* factor—the extent to which the harmlessness of the error is open to question. *Gonzalez-Flores*, 418 F.3d at 1101; *Lufkins*, 965 F.2d at 1482–83; *Pryce*, 938 F.2d at 1348. The court in *Rose* also found it useful to evaluate the extent to which the arguments the government expressly made assisted the court on the harmlessness issue. *Rose*, 104 F.3d at 1415. At the same time, courts have been mindful of concerns that sua sponte consideration of harmlessness may burden reviewing courts, may give the state needless and unfair opportunities to show harmlessness, and may be inequitable in allowing reviewing courts to construct the state's best harmlessness arguments without providing appellants an opportunity for response. *See, e.g., Gonzalez-Flores*, 418 F.3d at 1101.

Even if we could not conclude as we do here that the parties' arguments raise the prejudice issue implicitly, we think an approach analogous to that taken by the courts cautiously exercising discretion in sua sponte harmless-error review illustrates the propriety of addressing prejudice in this case. Blaise bears the burden of showing prejudice and thus concerns we may have about shouldering a burden for the State are diminished. Moreover, we are convinced the State's strongest argument for the absence of prejudice is, if not explicitly made, an intimately related variant of the argument it actually raised. Goals of fairness and conservation of judicial resources compel consideration of prejudice here.

With that in mind, we turn to the substance of Blaise's ineffective-assistance argument.

Blaise contends that had the trial been bifurcated much of the evidence used to establish that he suffered from a mental abnormality and was likely to reoffend would not have been admitted when the jury considered whether his conversation with S.E. in the park was sexually motivated. He argues the testimony of the State's expert that Blaise suffered from a mental abnormality and the extensive evidence of his prior bad acts were exceptionally prejudicial and would have been nearly impossible for the jury to disregard when considering whether the harassment was sexually motivated.

We agree that some of the evidence of Blaise's criminal history and misbehavior while institutionalized was not relevant to the determination of whether his harassment of S.E. was sexually motivated and created a risk of prejudice. However, when we consider the evidence of Blaise's interaction with S.E.—standing alone and apart from any evidence of Blaise's prior conduct—we are convinced that any reasonable person could only find Blaise's conversation with S.E. was sexually motivated. The entire focus of Blaise's conversation with S.E., a complete stranger to him, was sexual. He asked her whether she engaged in sex "on the side," whether she would engage in anal intercourse, and whether she would take her clothes off and engage in sexual activity if she were threatened with violence. She testified that she tried to steer the conversation to topics more comfortable for her but that Blaise only asked more sexual questions.

Although there is no direct evidence that Blaise was sexually aroused at the time of his interaction with S.E., this does not undermine our confidence in the determination that Blaise acted with sexual

motivation. In this context, "sexually motivated" means that "one of the purposes for the commission of [the] crime is the purpose of sexual gratification of the perpetrator of the crime." Iowa Code § 229A.2(9). Blaise's own testimony revealed he was sexually interested in S.E. when he began speaking to her. Although he claimed to have lost sexual interest immediately when S.E. told him that she did not have sex "on the side," the evidence shows Blaise pressed forward with his explicitly sexual interrogation. We are not persuaded that the "purpose" specified in section 229A.2(9) must result in instantaneous or contemporaneous sexual reward or consequence for the respondent. *See State v. Patterson*, 963 P.2d 436, 439–40 (Kan. Ct. App. 1998) (concluding the actor's purpose of achieving eventual gratification was sufficient to establish act was sexually violent under Kansas Sex Offender Registration Act).

At least one other jurisdiction has examined the related question of whether sexual intent must accompany conduct as a result of statutory language requiring "intent to arouse or satisfy the sexual desires" and concluded that in certain circumstances, the intent must coincide with the act. *See DeBruhl v. State*, 544 N.E.2d 542, 546 (Ind. Ct. App. 1989) (noting intent to gratify required by the statute must coincide with the conduct and that removal of clothing and kissing of neck did not provide immediate sexual desire, but only facilitated eventual sexual desire); *Clark v. State*, 695 N.E.2d 999, 1002 (Ind. Ct. App. 1998) (declaring state must show act of touching was accompanied by a specific intent to arouse or satisfy sexual desire); Ind. Code § 35-42-4-3(b) (West, Westlaw current through all 2012 legislation) ("A person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, . . . with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting . . . ."). *But*

*see Nuerge v. State*, 677 N.E.2d 1043, 1049 (Ind. Ct. App. 1997) (explaining *DeBruhl* "should not be extended to mean that under no circumstances can acts such as [kissing and clothing removal] be done with the intent to satisfy sexual desires"). Those cases, however, dealt with language from Indiana's sex crimes statute, as opposed to Indiana's sexually violent predator statute. *Compare* Ind. Code § 35-42-4-3 (entitled "Sex crimes: Child molesting"), *with id.* § 35-38-1-7.5 (entitled "Findings regarding sexually violent predators"). Those courts were thus tasked, as we often are in the criminal context, with determining whether the proscribed conduct was temporally linked with the requisite criminal intent. *See, e.g., State v. Schminkey*, 597 N.W.2d 785, 789 (Iowa 1999) (explaining that demonstrating defendant acted with specific purpose of depriving owner of his property required determination of what defendant was thinking when act was done).

By contrast, we confront our sexually violent predator statute here. As we have acknowledged on multiple occasions, our "procedures regarding sexually violent predators should reflect legitimate public safety concerns, while providing treatment services designed to benefit sexually violent predators who are civilly committed." Iowa Code § 229A.1 para. 2; s*ee also In re Det. of Betsworth*, 711 N.W.2d 280, 286, 288 (Iowa 2006). The goal of treatment is echoed in section 229A.7(5)(*b*), which provides that a sexually violent predator must be committed for "control, care, and treatment until such time as the person's mental abnormality has so changed that the person is safe to be placed in a transitional release program or discharged." Iowa Code § 229A.7(5)(*b*); *see also In re Det. of Betsworth*, 711 N.W.2d at 288. Given the special purpose of our statute, we think it reasonable to conclude that our legislature intended a different contemporaneousness requirement for

the phrase "purpose of sexual gratification" than the standard that has been applied in criminal cases interpreting the phrase "intent to arouse or satisfy."[7]  *Compare Patterson*, 963 P.2d at 439–40 (interpreting sex offender registration statute's "sexual gratification" language more broadly), *with State v. Halstien*, 857 P.2d 270, 274–75, 277 (Wash. 1993) (interpreting criminal statute's "sexual motivation" language more narrowly, in light of statute's directive that "court shall make a finding of fact of whether . . . sexual motivation was present at the time of the commission of the offense" (citation, emphasis, and internal quotation marks omitted)).  Accordingly, we believe our legislature intended the provision to require proof of "purpose" of sexual gratification—a broad, forward-looking term encompassing the concept of intent—instead of proof of a respondent's achievement of actual or immediate gratification.  Thus, even in the absence of proof of Blaise's contemporaneous sexual arousal, we believe no reasonable fact finder could conclude Blaise's purposes in engaging S.E. did not include either immediate or eventual sexual gratification.

Further, although Blaise contends that "most" of the State's expert's testimony would have been excluded had the question of sexual

---

[7]We also note that our statute's recognition that "sexually violent predators' likelihood of engaging in repeat acts of predatory sexual violence is high," Iowa Code § 229A.1 para. 1, is consistent with an understanding of paraphilia as ongoing atypical behavioral expression and may compel a broader temporal understanding of sexual gratification.  *See, e.g.*, Andrei Dandescu & Roger Wolfe, *Considerations on Fantasy Use by Child Molesters and Exhibitionists*, 15 Sexual Abuse: J. Res. & Treatment 297, 303 (2003) ("It is possible that a type of behavior/fantasy loop gets established, in which sexually deviant behaviors trigger more sexually deviant fantasies, which in turn trigger more behaviors, and so on."); John Matthew Fabian, *The Risky Business of Conducting Risk Assessments for Those Already Civilly Committed as Sexually Violent Predators*, 32 Wm. Mitchell L. Rev. 81, 143–44 (2005) (summarizing literature describing paraphilia as successive attempts to recreate an underlying fantasy); Dion G. Gee, et al., *The Content of Sexual Fantasies for Sexual Offenders*, 16 Sexual Abuse: J. Res. & Treatment 315, 326–28 (2004) (observing that current research suggests offense-specific sexual fantasies occur throughout an "offense process," which includes a postoffense phase).

motivation been bifurcated for trial purposes,[8] the State argues the expert testimony of Dr. Phenix, based in part on Blaise's other bad acts, was directly relevant to the question of whether the harassment of S.E. was sexually motivated. Further, the State contends the basis of Dr. Phenix's opinion as to whether Blaise's harassment of S.E. was sexually motivated—her diagnosis of Blaise, her interviews with him, her review of his past sexual behavior—was also relevant and helpful to the jury in assessing her credibility.

To establish that the harassment was sexually motivated, Dr. Phenix testified that "to a reasonable degree of professional certainty" the harassment of S.E. "was a sexually motivated offense." She testified that her review of Blaise's history and her interviews with him convinced her that he was sexually excited or aroused by his interaction with S.E. because he was asking S.E. about the type of sexual behaviors—anal sex and rape—that were the subject of fantasies he described during her interview with him. Her opinion was also partially based on the diagnosis of "paraphilia not otherwise specified, nonconsenting persons," (indicating Blaise is aroused by nonconsensual sex), as well as the attempted rape of the nine-year-old.

We acknowledge that Blaise offered evidence to counter the State's evidence that the harassment was sexually motivated, including testimony from Blaise and Dr. Hart. Blaise testified that although he was initially looking for a date with S.E., once he found out she did not

---

[8]The State's expert testified both on the issue of whether the harassment was sexually motivated and whether Blaise suffers from a mental abnormality. No objection was made to her testimony, although Blaise now asserts on appeal that it was inappropriate for the State's expert to testify as to an ultimate issue in the case—that the harassment was sexually motivated. However, Blaise does not argue that his trial counsel was ineffective for failing to object to the State's expert's testimony, and indeed, the defense presented expert testimony on the same "ultimate" issue. Under these circumstances, we assume without deciding that the expert testimony was admissible.

"fool around on the side" he was no longer sexually interested in her. He characterized the rest of the conversation as a "religious" discussion, in which the questions were meant to be parables and stated that he did not think she would be offended by the questions about anal sex because she was a nurse. Notably, Dr. Hart did not testify that the harassment was *not* sexually motivated, but rather that he "was not able to conclude with a reasonable degree of certainty that [the harassment] *was* sexually motivated." (Emphasis added.) His conclusion was based on a lack of evidence that Blaise was aroused during the interaction with S.E. or that he behaved sexually shortly before or after the conversation. Dr. Hart opined that Blaise's bad behavior, sexual and otherwise, was motivated by a desire to shock others or make them angry, and not by sexual desire.

As Blaise's claim is one of ineffective assistance of counsel, the test we must apply is whether there is a reasonable probability the result of the proceeding would have been different but for the claimed ineffective assistance of counsel. *See State v. Cromer*, 765 N.W.2d 1, 11 (Iowa 2009). A "reasonable probability" is one that is sufficient to undermine our confidence in the outcome. *Id.* In this case, when we disregard the evidence of Blaise's prior bad acts and consider only the remaining evidence, our confidence in the outcome of the proceeding is not shaken. The graphic sexual nature of the statements made by Blaise to S.E. is overwhelming evidence that the statements were sexually motivated, especially considered in conjunction with Dr. Phenix's testimony that Blaise was aroused by and admittedly fantasized about nonconsensual sex. Blaise's expert testimony presented to contradict the testimony of the State's expert on the issue of sexual motivation does not preclude our determination that Blaise has failed to establish prejudice. *See Kenley v.*

*Bowersox*, 275 F.3d 709, 712–14 (8th Cir. 2002). Because in our view the evidence of Blaise's statements to S.E.—standing alone and apart from any other acts evidence—overwhelmingly established Blaise's sexual motivation in the harassment offense, we find no room for debate regarding whether *Strickland* prejudice resulted from any breach of duty by counsel. Accordingly, we conclude Blaise was not prejudiced by his trial counsel's failure to adequately argue the trial should have been bifurcated to protect Blaise's due process rights.

Despite our conclusion that Blaise was not prejudiced in this case, we do not wish to be understood as disapproving of bifurcation of trials under chapter 229A. The dissent in *Barker v. State*, 877 So. 2d 59 (Fla. Dist. Ct. App. 2004), explains the wisdom and value of bifurcating a trial in cases requiring the state prove both mental abnormality and sexual motivation:

> After the jury has been subjected to considerable expert testimony about defendant's long propensity to seek sexual gratification through violence, a primary force in his life, it would hardly be surprising if the ordinary juror found enormous difficulty in ascertaining and assessing this past conduct solely by reference to fact evidence from the past. Given the intended effect of the expert opinion propensity evidence, the reliability of any jury determination that the past non-sexual crime was in fact sexually motivated is called profoundly into question.

*Barker*, 877 So. 2d at 67 (Farmer, C.J., dissenting).

The *Barker* dissent, after "weigh[ing] the interest of [the] defendant, his right to liberty, against the burden imposed on the state by denying bifurcation," and "assess[ing] the risk that a denial of bifurcation might lead to an erroneous determination" on the sexual motivation issue, concluded due process required bifurcation of the trial. *Id.* at 70. We believe bifurcation is a relatively low cost way to ensure fair adjudication

in SVP proceedings and should be favored by district courts when requested in appropriate circumstances.

**C. Prosecution's Misstatement of the Evidence.** Blaise also argues that the district court erred in allowing the prosecutor to tell the jury that Blaise's interaction with S.E. took place at gunpoint. Specifically he points to the following exchange between the prosecutor and Blaise's expert:

> Q: So even when he was discussing rape and doing it at gunpoint, you felt that that was still fishing around for possible dates? It's a yes or no question, Doctor. A: I saw—
> [DEFENSE COUNSEL]: I'm going to object. It can't be a yes-or-no question. It's a misstatement of the evidence. There's no doing it at gunpoint.
> [PROSECUTOR]: Actually that was the testimony, what she would do if he—if someone held a gun to her and raped her.
> THE COURT: Doctor, you can answer the question. Do you want it read back?
> DR. HART: No, I think I remember.
> THE COURT: All right.
> DR. HART: Thank you. I saw no evidence that he—when he approached the victim, that he did so at gunpoint.

Blaise argues that the court's error was compounded when the prosecutor made this statement during closing argument.

> Common sense would say that if you're walking up to a woman and you have a gun or something that looks like a gun, and you are telling her, hey, you know, what would you do if somebody raped you, would you call the police? What if—what if somebody asked you to take your clothes off, would you do it? Well, what if they had a gun, . . . would you fight them?

Blaise concedes no objection was made to the prosecutor's statement but argues this misrepresentation of the evidence exacerbated the damage caused by the court's earlier failure to rule on the objection to the prosecutor's question suggesting Blaise had brandished a gun while committing the crime.

We conclude the initial exchange among the two attorneys, the expert, and the court, as a whole, demonstrates that although the prosecutor's initial question was subject to two meanings, she clarified that she meant Blaise had asked S.E. what she would do if threatened with a gun, and that she did not mean Blaise had himself expressly threatened S.E. with a gun. We further conclude the prosecutor's later statement during her closing argument was not a misstatement of the evidence. When Blaise was arrested shortly after his interaction with S.E. he was in possession of a gun. Although he did not reveal a gun to S.E., and despite his testimony that he found the gun after talking to S.E., a reasonable jury could find on this record that Blaise was in possession of the gun while he talked to S.E. We find no abuse of the district court's discretion on this issue.

**D.** **Blaise's Other Arguments.** We have also considered the arguments raised by Blaise in his pro se brief and find them without merit.

**IV. Conclusion.**

For the reasons stated above, we affirm Blaise's adjudication and commitment pursuant to Iowa Code chapter 229A.

**AFFIRMED.**