**IN THE COURT OF APPEALS OF IOWA**

No. 25-0072
Filed March 19, 2025


**IN THE INTEREST OF T.T.,**
**Minor Child,**

**STATE OF IOWA,**
    Petitioner-Appellant.
_____


Appeal from the Iowa District Court for Polk County, Susan Cox, Judge.


Following termination of a mother's parental rights, the State appeals from the juvenile court's order placing guardianship of the child with the foster parents. **REVERSED AND REMANDED WITH DIRECTIONS.**


Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellant.

Nicole Garbis Nolan and Jami J. Hagemeier of Youth Law Center, Des Moines, attorneys and guardians ad litem for minor child.


Considered by Greer, P.J., and Langholz and Sandy, JJ.

**SANDY, Judge.**

The State appeals from the juvenile court's order placing guardianship of the child with her foster parents, arguing: (1) the juvenile court lacked jurisdiction to decide guardianship and custody issues due to a pending certiorari action before our court; (2) the juvenile court erred by failing to appoint Iowa Department of Health and Human Services (HHS) as the child's guardian and by applying other provisions of Iowa Code chapter 232 (2023) in appointing a guardian; and (3) public policy requires that courts strictly adhere to section 232.117(3).

## I. Background Facts and Proceedings

The child was born in September 2022, and the State filed a child-in-need-of-assistance petition two weeks later due to the mother's use of various substances, including methamphetamine, amphetamines and alcohol. The State did not request removal at that time. The State finally requested removal in October 2022 and, following that request, the child tested positive for methamphetamine and amphetamines. Following the child's positive test, she was placed in a foster home. HHS has a long history of involvement with the family. The child has three siblings, all of whom had been removed from the mother's care before the child's birth due to the mother's substance use.

The child has remained with the same foster family since her initial removal, but in May 2024, HHS sought to move the child to a new foster home in which she could live with two of her siblings. However, prior to HHS finalizing relocation, the juvenile court entered a preemptive May 7, 2024, order requiring an evidentiary hearing prior to any relocation of the child. HHS petitioned for writ of certiorari in response to the relevant orders, and the petition was still pending at the time this

appeal was filed. We recently sustained that writ, finding the juvenile court exceeded its statutory authority by wrongfully restricting HHS's placement authority. *See Iowa Dep't of Health & Hum. Servs. v. Iowa Dist. Ct.*, No. 24-0834, 2025 WL 548012, at *7 (Iowa Ct. App. Feb. 19, 2025). One judge dissented and would have annulled the writ. *See Iowa Dist. Ct.*, 2025 WL 548012, at *10 (Greer, J., dissenting).

HHS petitioned to terminate the mother's parental rights to the child in November 2023. A termination hearing occurred in December, and before a ruling was issued, the record was reopened in March 2024 to address the mother's motion arguing she had made extensive progress. The termination hearing resumed in May and following the hearing, the juvenile court terminated the mother's parental rights to the child from the bench. The juvenile court entered its written termination order in June.

The juvenile court's termination order did not establish guardianship, explaining:

> The court further ordered that her prior order from 5-7-2024 re. [the child] remains in effect. Also, the court noted she was not making any decisions re. guardianship of the child today.
> After the written [TPR] ruling is filed, then the court will set a separate hearing to address those issues.

The juvenile court set a hearing for December to determine the appointment of a guardian for the child. The State moved to continue, "citing the juvenile court's lack of jurisdiction given the [pending] appeal" before our court. The juvenile court denied that motion and held the hearing. At the conclusion of the hearing, the juvenile court appointed the child's foster parents as her guardians. It entered a supplemental written order in January 2025 incorporating that ruling.

The State views that order as error,[1] asking that we reverse and remand "the juvenile court order denying the State's motion to continue and appointing the child's foster parents as her guardian pursuant to Iowa Code section 232.117(3)."

## II. Standard of Review

We review parental termination proceedings de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (citation omitted).

## III. Discussion

### A. Jurisdiction

The State argues that the pending writ of certiorari before our court divested the juvenile court of jurisdiction "to rule on the issue of custody." While the juvenile court generally loses jurisdiction over the certiorari issue under review by the appellate court, *see In re B.L.*, 470 N.W.2d 343, 347 (Iowa 1991), the State concedes that the juvenile court retains jurisdiction to decide "issues collateral to and not affecting the subject matter of the appeal," *In re Tollefsrud's Estate*, 275 N.W.2d 412, 418 (Iowa 1979). "Matters that are not directly involved in the appeal may be dealt with by the juvenile court during the appeal process." *B.L.*, 470 N.W.2d at 347.

Such is the case here. In the writ proceeding pending at the time this appeal was filed, our court was asked to review whether the juvenile court could

---

[1] The State also argued that because the aforementioned appeal was pending, the juvenile court was deprived of jurisdiction to address the guardianship in the first place.

unilaterally require an evidentiary hearing to be held before HHS could exercise its placement decision over a child in its custody. *See Iowa Dist. Ct.*, 2025 WL 548012, at *4 ("[HHS] argues that the juvenile court's order was illegal because it exceeded the court's statutory authority to review [HHS]'s specific placement decisions for the [child]."). But in this case, we are asked to decide if the juvenile court erred in failing to appoint HHS as the child's guardian pursuant to Iowa Code section 232.117(3). Although these are both, broadly speaking, questions involving custody of the child, neither question affects the outcome of the other. The issue before our court today would be unaffected by the formerly pending appeal, regardless of whether the writ was sustained or annulled—HHS would have retained custody of the child under any result. As the matter before us now was "not directly involved in the [then pending] appeal," the juvenile court had jurisdiction over this issue at the time it entered its guardianship order. *See B.L.*, 470 N.W.2d at 347.

*B. Appointment of HHS as the Child's Guardian*

When the juvenile court terminates a parent's rights and finds guardianship and custody with the child's other parent is not in the child's best interests,[2] it shall transfer guardianship and custody to "[HHS] if [HHS] had custody of the child at the time of the filing of the petition for termination of parental rights . . . unless the department waives its priority." Iowa Code § 232.117(3).

Here, HHS had custody of the child at the time the termination petition was filed. HHS did not waive its priority—it requested to be appointed the child's

---

[2] The father's parental rights were terminated in March 2024.

guardian. The use of the word "shall" in section 232.117(3) mandates a specific action by the juvenile court. Although "[s]ometimes courts are justified in interpreting the word 'shall' as 'may,'" this is not the case where a statute "direct[s] that a public body do certain acts." *State v. Klawonn*, 609 N.W.2d 515, 522 (Iowa 2000) (citation omitted). And the statute's further clarification that the juvenile court may not exercise discretion in the guardianship decision "unless [HHS] waives its priority" further reinforces the mandatory nature of the statute. But the juvenile court stated that section 232.117 "does not provide a framework to evaluate the categories of guardianship priority." We disagree. Section 232.117(3) contains a directive mandating that the juvenile court should have transferred guardianship to HHS.

Because section 232.117(3) governs the guardian-appointment decision, the juvenile court's reasoning based on statutes governing the selection of placement categories and review of placement decisions at other times in juvenile proceedings was misplaced. So too was its reasoning based on section 232.118 governing the removal of a court-appointed guardian. As HHS had not yet been appointed guardian, it could not yet have "unreasonably or irresponsibly fail[ed] to discharge" the duties as guardian as required to support removal. Iowa Code § 232.118(1). We understand and share some of the juvenile court's concerns about the decisions HHS might make as guardian given its past intended placement changes while the child was placed in its custody. But it is not clear that HHS would still intend to move the child from her current home if appointed

guardian.[3]  And under the governing statutes, HHS must be given the chance to perform its guardianship duties in the child's best interest before the court can remove it for failing to do so.  We thus agree that the statute directs the juvenile court to place the child's guardianship with HHS.  Because the State has prevailed in its primary argument, we decline to address its alternative public policy argument.

Accordingly, we reverse the juvenile court's guardianship order to place guardianship of the child with HHS.  We remand to the juvenile court for entry of an order consistent with this opinion.

**REVERSED AND REMANDED WITH DIRECTIONS.**

Langholz, J., concurs; Greer, P.J., concurs specially.

---

[3] At the hearing, the HHS worker assigned to this case in the adoption unit testified that because HHS was not yet the guardian it had "not made a final decision about placement" but that he "would not recommend that" the child "move" to a new placement.

**GREER, Judge** (specially concurring).

I agree with the first part of the majority opinion related to the jurisdiction of the juvenile court and agree that "the matter before us now was 'not directly involved in the [then pending] appeal.'" *See In re B.L.*, 470 N.W.2d 343, 347 (Iowa 1991). Thus, the juvenile court had jurisdiction to enter the guardianship order.

I have more trouble with the discussion involving the appointment of Iowa Health and Human Services (the Department) as the child's guardian. Having said that, I read the statutory language as the majority does, so I agree that the Department must be given guardianship and custody of the child unless the Department waives its priority or until the Department is removed as guardian for failing to perform its duties in the child's best interest. *See* Iowa Code §§ 232.117(3), 232.118(1) (2023). But, my concern relates to the mishmash involved with chapter 232 when these important decisions must be made so that (1) there can be careful and timely consideration of the positions of the advocates and (2) the paramount concern remains laser-focused on the best interests of the child. *See Iowa Dep't of Health & Hum. Servs. v. Iowa Dist. Ct.*, No. 24-0834, 2025 WL 548012, at *7–10 (Iowa Ct. App. Feb. 19, 2025) (Greer, J., dissenting) (noting the quagmire involved with how "the Department, our legislature, and our court [could] align with the process that allows a child to be moved from a long-term placement, which might be contrary to the child's best interests, before the choice of the new placement can be tested").

Here, once it appeared that the child would be removed from the only home she had known since birth, the guardian ad litem (GAL) attempted to show that the Department was not acting in the child's best interests by unreasonably or

irresponsibly failing to discharge its duties. It was the issue in our previous appeal—only related to the choice of placement, where the majority determined the juvenile court had no authority to restrict the Department by first requiring an evidentiary hearing. *Id.* at *7. It is the issue in this appeal—related to the choice of guardian. And yet, although a hearing on the issue was held in December 2024, at which extensive testimony set out important best-interest concerns,[4] and the juvenile court ruled that by clear and convincing evidence the Department "failed to act in [the child's] best interests by unreasonably or irresponsibly failing to discharge its duties in selecting a suitable placement and/or guardian for the child," no action can be taken. The problem is that so far there is no *process* that allows action on that finding. We just keep saying "not yet." Section 232.118(1)(a)[5] suggests that a hearing is the avenue to challenge the actions of the required

---

[4] The GAL called the child's medical provider, Nurse Practitioner Katherine L. Scott, Department adoption worker James Blocker, and the child's foster mom. Dr. Scott testified that

> moving to a home that is more chaotic would lend to increasing [the child's] stress level, thus, increasing the trauma and the discomfort, as well as stress that she is feeling. And at this age, being in an environment like that can alter the prefrontal cortex of the brain, which is involved with executive functioning, and we know that high stress levels can have long-term developmental affects on socio-emotional, academic, and behavioral outcomes for kids.

[5] Section 232.118 provides:

> (1) Upon application of an interested party or upon the court's own motion, the court having jurisdiction of the child may, after notice to the parties and a hearing, remove a court-appointed guardian and appoint a guardian *in accordance with the provisions of section 232.117, subsection 3.*
>
> (a) The moving party or a party opposed to the actions of the guardian has the burden to establish that the court-appointed guardian failed to act in the child's best interests by unreasonably or irresponsibly failing to discharge the guardian's duties in finding a suitable adoptive home for the child.

(Emphasis added.)

selection of guardian pursuant to section 232.117(3), but as we find today, that does not allow action under these facts.

Very few cases address the concerns that I raise. But in the one that comes closest, *In re K.D.*, the process used to test the harm related to the Department's decision-making came after the harm occurred. 975 N.W.2d 310, 321–22 (Iowa 2022). After the Department removed the children from an eighteen-month placement with their stepgrandmother, a hearing to remove the Department as guardian was held over a month later. *Id.* at 315–16. The juvenile court denied the requests to remove the Department as custodian. *Id.* at 318. When reviewing the juvenile court's decision, our supreme court concluded:

> [The Department] failed to act in the children's best interests because it directly harmed the children and only added to their trauma when it uprooted them from their stepgrandmother's home by surprise and placed them with foster parents who were seemingly unaware of the children's mental health issues or therapeutic needs. [The Department] also disregarded the advice from the children's therapists about their mental health needs through its actions in this case.

*Id.* at 326–27.

Chapter 232 operates to avoid harm to a child, and a process that requires that harm occurs before action is allowed seems counterintuitive. So, tell me that we have a good process to review unreasonable or irresponsible discharge of duty and explain it to me like I am a child trying to seek permanency in the juvenile court system.